OPINION AND ORDER
 

 CRABB, District Judge.
 

 Plaintiffs Annie Laurie Gaylor, Anne Nicol Gaylor, Dan Barker, and Shelly Johnson are members of plaintiff Freedom From Religion Foundation, Inc., an organization that advocates the separation of church and state. On November 21, 1995, plaintiffs applied for a permit to display a large banner proclaiming “State/Church — Keep Them Separate” in the Wisconsin State Capitol. Acting pursuant to Wis.Stat. § 16.845 and Wis.Admin.Code § Adm. 2.04, defendant Michael Metcalf, Chief, Wisconsin Capitol Police, granted the permit. On November 30, 1995, plaintiffs placed the banner in the capítol rotunda. On December 18, 1995, two weeks before plaintiffs’ permit was due to expire, state officials amended plaintiffs’ permit to allow them to display only a much smaller banner. State employees took down plaintiffs’ banner and plaintiffs did not replace it with a smaller display.
 

 Shortly thereafter, plaintiffs filed this civil action seeking declaratory, monetary and injunctive relief and alleging that defendants Tommy Thompson, James R. Klauser and Michael Metcalf violated plaintiffs’ constitutional rights when Thompson and Klauser ordered Metcalf to amend plaintiffs’ permit and to take down plaintiffs’ banner. The case is presently before the court on the parties’ cross-motions for summary judgment. Plaintiffs level a series of challenges at Wis.Admin.Code § Adm. 2.04, contending that it is an invalid time, place and manner restriction, that it constitutes a prior restraint on free speech and that it is unconstitutionally vague and overbroad. Plaintiffs maintain also that defendants violated both the establishment and free exercise clauses of the First Amendment by allowing a Christmas tree and menorah to remain in the capítol rotunda after defendants had amended plaintiffs’ permit. Finally, plaintiffs argue that defendants’ actions denied plaintiffs due process and equal protection of the law in violation of the Fourteenth Amendment and that defendants engaged in a conspiracy to deprive them of their constitutional rights. I conclude that plaintiffs have failed to adduce evidence sufficient to raise a genuine issue of material fact as to any of their claims and that defendants have shown that they are entitled to judgment as a matter of law. Accordingly, defendants’ motion for summary judgment will be granted.
 

 From the parties’ proposed findings of fact, I find the following facts to be undisputed.
 

 UNDISPUTED FACTS
 

 Plaintiff Freedom From Religion Foundation, Inc. is a Wisconsin corporation that seeks to maintain the separation of church and state. Plaintiff Anne Nicol Gaylor is the foundation’s president. Plaintiff Annie Laurie Gaylor is employed by the foundation as editor of the newspaper
 
 Freethought Today.
 
 Plaintiff Shelly Johnson is the assistant editor of
 
 Freethought Today.
 
 Plaintiff Dan Barker is an employee of the foundation.
 

 
 *1367
 
 Defendant Tommy Thompson is Governor of the state of Wisconsin. Defendant James R. Klauser is Secretary of the Wisconsin Department of Administration. Defendant Michael C. Metcalf is the Chief of the Capitol Police Department, an office of the Division of Buildings and Police Services within the Department of Administration. Defendant Metcalf is responsible for reviewing applications and granting permits for use of the capítol building and grounds for public meetings or displays.
 

 In December 1993, after receiving a permit from the capítol police, plaintiff Freedom from Religion Foundation, Inc. displayed in the capítol rotunda a banner
 
 9%
 
 feet by 2 feet 4 inches reading “State/Church — Keep Them Separate.” On November 21, 1995, plaintiff Shelly Johnson submitted a request on behalf of plaintiff foundation for a permit to display this same banner in the capítol rotunda from November 30 to December 30, 1995. Johnson indicated the size of the banner in the permit application. Defendant Metcalf signed the permit form on December 7, 1995 pursuant to Wis.Admin.Code § Adm. 2.04, although he granted verbal approval to the foundation a week earlier. On November 30, 1995, plaintiffs Annie Laurie Gaylor, Dan Barker and Shelly Johnson placed the banner in the capítol rotunda after receiving defendant Metcalfs verbal approval. During much of December 1995, a Christmas tree approximately 30 feet high, a sign describing the tree, a menorah larger than plaintiffs’ banner and a sign next to the menorah explaining the significance of Chanukah to the Jewish faith were on display in the capítol rotunda as symbols of the winter holiday season.
 

 On December 5, 1995, an organization named Citizens Concerned for Our Community submitted a request for a permit to display a banner of approximately the same size as plaintiff foundation’s, with the competing inscription “Separation Does Not Mean Divorce,” and a quotation from Thomas Jefferson. Defendant Metcalf approved the application and granted the organization a permit to display the banner from December 13,1995 to January 5,1996.
 

 At some point during December 1995, defendant Governor Thompson noticed plaintiffs’ banner in the capítol rotunda. Defendant Thompson believed that the banner was not appropriate to the physical context of the capítol and discussed this concern with defendant Klauser on the morning of December 18, 1995. (Whether the banner of Citizens Concerned for Our Community was displayed at the time of defendant Thompson’s conversation with defendant Klauser is in dispute. Defendants claim that defendant Thompson viewed both banners and found them to have similar problems before speaking with defendant Klauser. Plaintiffs contend that the Citizens’ banner was not displayed until 10:30 A.M. on December 18, several hours after defendant Thompson’s discussion with defendant Klauser. The parties dispute also whether defendant Thompson gave defendant Klauser any instructions concerning the banner or banners.)
 

 Defendant Klauser agreed with the governor that plaintiffs’ banner was not appropriate to the physical context of the building. Following his conversation with the governor, Klauser directed Thomas Krauskopf, Deputy Administrator of the Division of Buildings and Police Services of the Department of Administration, to notify plaintiffs that their permit was being amended to allow only a smaller sign (30" by 40", the same size as the signs describing the menorah and tree) and that the larger banner needed to be removed by noon that day. Defendant Klauser had no further involvement in the matter. Krauskopf telephoned defendant Metcalf at approximately 9:00 A.M. that morning to tell him that defendant Klauser had asked to have plaintiffs banner taken down by noon and that plaintiffs should be informed of the amendment to their permit. Defendant Met-calf directed Sue Barica, a program assistant in the capítol police office, to call plaintiff foundation, request the removal of the banner by noon and inform the foundation of the permit amendments. Between 9:30 A.M. and 10:00 A.M., Barica contacted both plaintiffs and Rev. Richard Prichard of Citizens Concerned For Our Community to advise them that their permits were being amended to
 
 *1368
 
 limit the size of the display to 30" by 40".
 
 [1]
 
 Approximately fifteen minutes later, Bariea received a call from plaintiff Anne Nicol Gaylor, who wanted to discuss the banner situation. Plaintiff Gaylor was not content with the response Bariea provided and explained that she would try to contact defendant Met-calf. Shortly thereafter, plaintiff Annie Laurie Gaylor arrived at Barica’s office and demanded an explanation why defendants were changing the terms of the permit. Bariea explained that because many groups would be requesting display space at the same time, the capitol police needed to regulate the size of banners. At 10:30 A.M., Marvin Munyon raised the banner of Citizens Concerned for Our Community in the capitol rotunda.
 

 At noon, Krauskopf and John Marx, Administrator of the Division of Budding & Police Services of the Wisconsin Department of Administration, went to the capitol rotunda to see whether plaintiffs’ banner had been removed and discovered that it had not. At approximately 12:30 P.M., defendanttMetcalf telephoned Dale Dumbleton, Director of the Bureau of Building Management-Capitol of the Wisconsin Department of Administration, to inform him of the banner situation. Dumbleton and William Beckman, Grounds Manager for the Bureau of Building Management — Capitol, investigated the matter and saw that the banners were still in place. Shortly thereafter, Metcalf met with Marx, Krauskopf, Dumbleton and Beckman and the group decided that the banners should be removed by capitol grounds crew employees. Defendant Metcalf ordered that both banners be removed and taken to a basement storage area for safekeeping until they were claimed by their owners. Beckman assigned Timothy Bennett and Timothy Heibel to this job and they completed it. Plaintiff Annie Laurie Gaylor was present when Bennett and Heibel took down plaintiffs’ banner and display frame but did not ask them to give the items to her. Plaintiff Dan Barker came to the capitol between 2:00 and 2:30 that afternoon and Beckman returned the foundation’s banner and display frame to him.
 

 On that same day, Citizens Concerned for Our Community replaced its banner with a sign 30" by 40". Sue Bariea noticed that plaintiff foundation had in place a sign consisting of a piece of cardboard approximately 8” by 10” with a bumper sticker containing the same slogan found on the larger banner. Defendants left the Christmas tree and menorah in the capitol rotunda.
 

 The authority to grant display permits in the capitol has been delegated to the capitol police, a subdivision of the Department of Administration. The capitol police evaluate these display permit applications pursuant to the factors contained in Wis.Admin.Code § Adm. 2.04. The capitol police average approximately 400 applications per year for display permits for all state government buildings administered by the Department of Administration. Permits for displays are denied rarely, although they may be denied if there is not adequate space or if the display would interfere with pedestrian traffic. During the ten years defendant Metcalf has been considering applications and the four years that Sue Bariea has been handling them, permits to put up a display have never been denied on the basis of content and have been denied for space or interference reasons only four or five times.
 

 William S. Reid, Policy Advisor to the Governor’s Office, sent a number of letters to plaintiff foundation’s supporters that included the statement:
 

 
 *1369
 
 The removal of the two banners was made at the request of Governor Thompson. Request for additional banners were expected and the Governor concluded that too many competing banners would further clutter the Rotunda.
 

 This statement concerning the governor’s involvement in the matter was not based on Reid’s personal knowledge but instead was an assumption unsupported by any information given to him.
 

 John Marx sent a letter dated January 16, 1996 to Anne Nicol Gaylor stating:
 

 The Department of Administration concluded that your banner and a competing banner nearby were unsightly. Requests for additional banners were expected and the department concluded that too many banners would further clutter the rotunda to the disappointment of thousands of people who visit the Capitol during the holiday season____
 

 The permit you received to place the banner in the Capitol was issued in accordance with Wisconsin Administrative code section 2.04 which allows the Department of Administration to exercise judgment and discretion in issuing permits for the use of state buildings. The department may set limits on permits and may refuse to issue a permit if the proposed use is not “appropriate to the physical context of the building or facility____”
 

 The terms of your permit (and that of the competing organization) were changed----
 

 Other displays have been reviewed and are not affected by this decision. There are no other hand-painted banners in the Rotunda. The other displays have been reviewed and, in the context of section 2.04, are found to be appropriate for the building.
 

 During June 1996, the capítol rotunda housed an exhibit concerning the contribution of German immigrants to American agriculture that included over 40 display panels and several flags measuring approximately six feet by three feet each.
 

 OPINION
 

 I.
 
 First Amendment Principles
 

 The First Amendment of the United States Constitution provides in part:
 

 Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech----
 

 Two freedoms central to American democracy are contained in the First Amendment’s brief text: freedom of speech and freedom of religion. This case involves both of those essential liberties. Plaintiffs assert that defendants violated their free speech rights by taking down the banner in which plaintiffs proclaimed a central tenet of their political philosophy. In addition, plaintiffs contend that the government violated the First Amendment’s guarantee of freedom of religion by allowing a Christmas tree and menorah to remain standing in the capítol rotunda after plaintiffs’ banner had been removed. As plaintiffs recognize, however, “[t]he speech issue is the heart of this matter,” Pl.’s Brief, dkt. #44, at 15, and this case turns primarily on the First Amendment principles applicable to freedom of speech, not freedom of religion.
 

 Defendants’ response to plaintiffs’ claims begins with the proposition that plaintiffs’ banner is not constitutionally protected expression because it was a “communicative structure.” Such an argument misconstrues the scope of protection offered by the First Amendment. A significant political message does not lose First Amendment protection because it is written on a banner rather than spoken by its proponent. If that were the case, political discourse would be severely curtailed. Even messages that make their point through symbolic appeal rather than words may be entitled to the First Amendment’s shield.
 
 See Capitol Square Review and Advisory Bd. v. Pinette,
 
 — U.S.-, -, 115 S.Ct. 2440, 2446, 132 L.Ed.2d 650 (1995) (Ku Klux Klan’s white cross is religious display entitled to constitutional protection);
 
 Grossbaum v. Indianapolis-Marion Bldg. Authority,
 
 63 F.3d 581, 586 (7th Cir.1995) (display of religious symbols is protected by First Amendment). Contrary to
 
 *1370
 
 defendants’ exhortations, the decisions reached by the Court of Appeals for the Seventh Circuit in
 
 Lubavitch Chabad House, Inc. v. City of Chicago,
 
 917 F.2d 341 (7th Cir.1990) (no constitutional right to erect a menor ah in public forum) and
 
 Graff v. City of Chicago,
 
 9 F.3d 1309 (7th Cir.1993) (no constitutional right to erect a newsstand on public sidewalk),
 
 cert. denied,
 
 — U.S.-, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994) do not hold otherwise. Those cases hold that individuals cannot erect a menorah or a newsstand on public property without first seeking the government’s permission to do so. They also make clear that the government does not have to allow its citizens to construct whatever they desire on public property. Plaintiffs are not contending that they should be able to display their banner without government permission or that they have an unfettered constitutional right to erect a display in the capítol rotunda. Instead, they allege merely that the defendants’ actions regarding their banner should be assessed pursuant to First Amendment principles. Although the First Amendment does not grant plaintiffs carte blanche to raise a banner in the state capítol, it does impose certain limits on defendants’ actions and is applicable to this case.
 

 II.
 
 Public Forum and Time, Place and Manner Restrictions
 

 Plaintiffs’ right to use government property to display its banner is not unlimited.
 
 Grossbaum,
 
 63 F.3d at 586. Such a right depends on whether the property where plaintiffs would like to place the banner is considered a public forum, a place that “by long tradition or by government fiat [has] been devoted to assembly and debate.’ ”
 
 Id.
 
 (quoting
 
 Perry Education Ass’n v. Perry Local Educators’ Ass’n,
 
 460 U.S. 37, 45, 103 S.Ct. 948, 954-55, 74 L.Ed.2d 794 (1983)). In this instance, the state of Wisconsin has opened the capítol rotunda to a variety of displays and exhibits and must be considered a public forum for the purpose of First Amendment analysis. However, that decision does not mean that the state is prohibited from imposing certain regulations on the time, place and manner of the displays. The state can implement such restrictions provided they “are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.”
 
 Ward v. Rock Against Racism,
 
 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989) (citations omitted).
 

 A.
 
 Significant Governmental Interest and Narrowly Tailored Means
 

 There is little question that the state of Wisconsin has a significant governmental interest in keeping the capítol rotunda free from visual clutter. The building is an important monument and source of historic pride for the citizens of this state. The state is and should be concerned with maintaining the capitol’s appearance.
 
 See City Council v. Taxpayers for Vincent,
 
 466 U.S. 789, 805, 104 S.Ct. 2118, 2128-29, 80 L.Ed.2d 772 (1984) (state can use its police powers to advance aesthetic values). The United States Supreme Court has recognized on numerous occasions that the state has a significant interest in protecting the appearance of its public property from the visual degradation caused by an accumulation of signs on that property.
 
 See Vincent,
 
 466 U.S. at 807, 104 S.Ct. at 2130;
 
 Metromedia, Inc. v. San Diego,
 
 453 U.S. 490, 507-08, 101 S.Ct. 2882, 2892-93, 69 L.Ed.2d 800 (1981);
 
 Lehman v. City of Shaker Heights,
 
 418 U.S. 298, 302-03, 94 S.Ct. 2714, 2716-17, 41 L.Ed.2d 770 (1974);
 
 see also City of Ladue v. Gilleo,
 
 512 U.S. 43, -, 114 S.Ct. 2038, 2047, 129 L.Ed.2d 36 (1994) (decision that city cannot ban almost all residential signs “by no means leaves the City powerless to address the ills that may be associated with residential signs”);
 
 Chicago Observer, Inc. v. City of Chicago,
 
 929 F.2d 325, 328 (7th Cir.1991) (government may curtail visual clutter for aesthetic and safety reasons).
 

 The size restriction imposed on plaintiffs by the amendment to their permit is narrowly tailored to serve the state’s significant interest in protecting the capítol from visual degradation. The smaller size leaves the capítol open for plaintiffs and other groups to communicate their messages, even if the
 
 *1371
 
 signs are not as conspicuous as their larger counterparts. Although defendants might have been able to accommodate a larger sign while still protecting the visual character of the capitol rotunda, it is not this court’s prerogative to articulate the optimal size of a visual display in the state’s most significant governmental facility. The fact that state officials permitted plaintiffs to hang the same banner in 1993 does not prevent defendants from making a different decision with respect to that banner in 1995, especially if the state anticipated additional applications for display permits.
 

 Contrary to plaintiffs’ assertions, the analysis is not affected by the state’s decision to leave in place a Christmas tree and a menorah that were much larger than 30" by 40". The Christmas tree and menorah are entirely different in aesthetic character from hand-painted banners. The state does not have a constitutional duty to require that each of the displays it allows is exactly the same size. For the same reason, the amended size limitation on plaintiffs’ banner is not made suspect by the June 1996 exhibition concerning German immigrants’ contribution to American agriculture, which took up more space inside the capitol rotunda than plaintiffs’ hand-painted banner.
 

 B.
 
 Alternative Channels of Communication
 

 Plaintiffs do not contend that the state has closed its alternative channels of communication. Plaintiffs publish a newspaper propounding their views and are free to spread their message elsewhere.
 

 C.
 
 Content of the Regulated Speech
 

 The more difficult question raised by defendants’ amended restriction on the size of plaintiffs’ banner is whether defendants took down the banner and amended the permit because they disagreed with the content of plaintiffs’ display. If the facts supported such a conclusion, defendants’ amendment to plaintiffs’, permit would constitute an invalid time, place and manner restriction and an illegal content-based discriminatory act in violation of plaintiffs’ First Amendment rights. However, plaintiffs have failed to adduce sufficient facts from which an inference could be drawn that defendants’ actions were motivated by their disdain for the message contained in plaintiffs’ display.
 

 The fact that the Christmas tree and menorah were left standing after the banners were taken down does not prove any content-based discrimination. If defendants had amended the permits of plaintiffs and Citizens Concerned for our Community to forbid the display of any banners, defendant’s decision to leave the tree and menorah on display might raise questions about the content-neutrality of their application of Wis.Admin.Code § Adm. 2.04, but defendants did not impose such a blanket prohibition on displays. Rather they amended the permitted size of the displays and allowed plaintiffs to continue to express their message in the capitol rotunda, albeit with a smaller display.
 

 In addition, whether or not Governor Thompson knew of the opposing banner when he spoke with defendant Klauser on the morning of December 18th, the undisputed fact is that plaintiffs’ banner was not the only one taken down. Defendants took down the Citizens’ banner and amended its display permit in the same way as plaintiffs’. Both groups were allowed to continue to express their sentiments; they merely had to do so with smaller displays.
 

 A finding that no content discrimination occurred does not mean that Governor Thompson and defendant Klauser may not have overstepped the limits of their role under state administrative law in granting or denying display permits. The letters of William Reid raise the question whether Thompson was directly involved in ordering the removal of the banners. However, whether defendants violated the state’s administrative code is a question of state law that the parties have not briefed and that I will not address in this opinion.
 
 See
 
 28 U.S.C. § 1367(c) (district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction).
 

 III.
 
 Prior Restraint
 

 Plaintiffs contend that the permit system imposed pursuant to Wis.Admin.Code § Adm. 2.04 is an impermissible prior re
 
 *1372
 
 straint on free speech. It is true that defendants’ system imposes limits on plaintiffs’ ability to disseminate their message. Persons seeking to hold a meeting or place a display in the capitol rotunda must seek prior approval. However, not all licensing or permit systems constitute unlawful prior restraints. Such systems will be considered prior restraints if they place “unbridled discretion in the hands of a government official or agency.”
 
 FW/PBS, Inc. v. City of Dallas,
 
 493 U.S. 215, 225-26, 110 S.Ct. 596, 605, 107 L.Ed.2d 603 (1990) (citing
 
 Lakewood v. Plain Dealer Publishing Co.,
 
 486 U.S. 750, 757, 108 S.Ct. 2138, 2144, 100 L.Ed.2d 771 (1988)). Plaintiffs contend that § Adm. 2.04 grants state officials such unbridled discretion because the provision does not set forth any neutral criteria on which permit decisions must be based. Plaintiffs focus primarily on § Adm. 2.04(l)(e), which allows state officials to grant display permits only if they are “appropriate to the physical context of the building or facility.” Plaintiffs argue that the subsection grants state officials too much discretion and therefore must be ruled unconstitutional because the risk of content-based censorship runs too high.
 

 Defendant Metcalf and the capitol police implement the permit application process pursuant to Wis.Stat. § 16.845 (managing authority of any facility owned by state may permit facility to be used for free discussion of public issues) and Wis.Admin.Code § Adm. 2.04(1), which directs that the public should be permitted to use the capitol for public meetings or for activities of a broad public purpose if such use:
 

 (a) Does not interfere with the prime use of the building or facility.
 

 (b) Does not unduly burden the managing authority.
 

 (c) Is not a hazard to the safety of the public or state employes; nor detrimental to the building or facility.
 

 (d) Does not expose the state to the likelihood of expenses and/or damages which cannot be recovered.
 

 (e) And is appropriate to the physical context of the budding or facility.
 

 Wis.Admin.Code § Adm. 2.08 pertains specifically to interior displays and decorations and requires individuals to receive the express written authorization of the Department of Administration before mounting any such items.
 

 Wisconsin Admin.Code § Adm. 2.04(5) forbids any discrimination because of religious viewpoint in the granting of display privileges. Although this factor would not restrain state officials bent on discriminating against certain groups from actually doing so, it does make clear the state’s policy that such decisions should not take religious viewpoint into consideration. In and of itself, § Adm. 2.04(5) is not an adequate bulwark against unbridled administrative discretion. However, the factors set out in § Adm. 2.04(1) are. Undoubtedly, these guidelines leave defendant Metcalf and the capitol police with some discretion in granting display permits. But the retention of some discretion is not a valid reason for ruling the provision unconstitutional.
 
 See Chicago Observer, Inc.,
 
 929 F.2d at 329 (making discretionary decisions is “business of government”). Rather than providing defendants unbridled authority, the regulations contained in § Adm. 2.04 require the granting of a permit unless the activity would disrupt the functioning of the state government.
 

 In this instance, the facts reveal that defendants relied on Wis.Admin.Code § Adm. 2.04(l)(e) when they amended plaintiffs’ permit. Defendants determined that the size of plaintiffs’ and Citizens’ banners were not “appropriate to the physical context” of the capitol. Plaintiffs grab the word “appropriate” from § Adm. 2.04(l)(e) and run with it, contending that any guideline that requires state officials to determine what is “appropriate” cannot pass constitutional muster.
 
 See Cohen v. California,
 
 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971);
 
 Milwaukee Mobilization For Survival v. Milwaukee County Park Commission,
 
 477 F.Supp. 1210, 1217-18 (E.D.Wis.1979);
 
 Swearson v. Meyers,
 
 455 F.Supp. 88 (D.Kan.1978).
 

 In
 
 Cohen,
 
 403 U.S. 15, 91 S.Ct. 1780, the Supreme Court held unconstitutional a law that prohibited “maliciously and willfully disturb[ing] the peace ... by offensive conduct” as applied to a young man wearing a leather
 
 *1373
 
 jacket in the Los Angeles County Courthouse that bore the message “Fuck the Draft.”
 
 Cohen
 
 may be an interesting and laudable example of the Court’s First Amendment jurisprudence, but it is not applicable- to. this case. The word “appropriate” is nowhere to be found in the statutory language ruled unconstitutional.
 
 See id.
 
 at 16'n. 1, 91 S.Ct. at 1788 n. 1 (citing statutory language in full). In
 
 Cohen,
 
 the Court held that the state could not prohibit Cohen from wearing a message on his jacket conveying his profane but distinct sentiments concerning the draft merely because unwilling viewers might find it shocking or distasteful.
 
 Id.
 
 at 21, 91 S.Ct. at 1786. The Court said nothing about what the state could have done if Cohen had plastered a number of flyers containing the same or a different message on the courthouse walls. Later cases make clear that the government is on firm constitutional ground when it regulates visual displays so as to protect the aesthetic character of a given area.
 
 See supra
 
 § II.
 

 Whatever the persuasive value of the other cases plaintiffs cite,
 
 Milwaukee Mobilization, All
 
 F.Supp. 1210, and
 
 Swearson,
 
 455 F.Supp. 88, the United States Supreme Court has held permissible a guideline requiring City of New York officials to “insure
 
 appropriate
 
 sound quality balanced with respect for nearby residential neighbors____”
 
 Ward,
 
 491 U.S. at 794, 109 S.Ct. at 2755 (emphasis added). In
 
 Ward,
 
 the Court explained that “[w]hile these standards are undoubtedly flexible, and the officials implementing them will exercise considerable discretion, perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.”
 
 Id.
 

 The Court of Appeals for the Seventh Circuit reached a similar conclusion in
 
 Graff v. City of Chicago,
 
 9 F.3d 1309 (7th Cir.1993). There, the court determined that a Chicago ordinance setting out guidelines by which city officials would decide whether to grant permission to construct a newsstand did not constitute a prior restraint. Id. at 1314. The criteria gave specific and adequate guidance to the official making permit decisions. Id. at 1318. The guidelines included in Wis.Admin.Code § Adm. 2.04 are similarly sufficient. The undisputed facts make clear that very few permit applications are denied. Those that are denied are denied because of lack of space or traffic flow problems. These reasons fit well within the § Adm. 2.04(1) guidelines and are legitimate reasons for amending plaintiffs’ permit. Section Adm. 2.04(1) provides a constitutionally sufficient bulwark against unbridled administrative discretion. Whether defendants overstepped this discretion by amending the display permits once they were granted is a question of state law that I will not reach.
 

 IV. Void
 
 for Vagueness and Overbreadth
 

 Plaintiffs contend that Wis.Admin.Code § Adm. 2.04 is both unconstitutionally vague and overbroad. However, neither the void for vagueness nor the overbreadth doctrine provide a basis for the relief plaintiffs seek. An overbroad statute is one that is designed to burden or punish activities that are not constitutionally protected, but that includes within its scope activities that are protected by the First Amendment. Ronald D. Rotunda & John E. Nowak,
 
 Treatise on Constitutional Law
 
 — Substance
 
 and Procedure
 
 § 20.8 (2d ed. 1992). Courts will strike down such a statute even when the speech of the party before the court is not entitled to First Amendment protection because of the concern that the law might chill other individuals from engaging in protected speech that the statute appears to curtail.
 
 Id.
 
 Although a statute might be constitutional as applied to the party before the court, that party can argue that the statute cannot be applied because it is unconstitutional on its face. To make an overbreadth argument in this instance, plaintiffs might contend that § Adm. 2.04 places permissible limitations on their speech but imposes impermissible burdens on the free speech rights of others and therefore should be ruled unconstitutional. I do not understand plaintiffs to be making such an argument. Rather, plaintiffs contend that § Adm. 2.04 is unconstitutional as applied to them because it places too much discretion in the hands of state officials. Such an argument is just a variant of plaintiffs’ prior restraint argument that I have rejected already. Plaintiffs have challenged § Adm. 2.04 as it applies to them
 
 *1374
 
 directly and have no need to employ the overbreadth doctrine.
 

 The void for vagueness doctrine is closely related to the overbreadth doctrine and seeks to guarantee that laws are clear enough to give fair notice to the public as to what activities will be considered criminal. Rotunda & Nowak,
 
 supra,
 
 § 20.9.' People are entitled to be well aware of precisely what expression is considered criminal so that they can engage in protected expression without fear of criminal prosecution. The doctrine insures that law enforcement officials are limited by clear guidelines and do not have unlimited discretion to enforce statutes on a selective basis.
 
 Id.
 
 The first basis for the void for vagueness doctrine is not implicated here. Plaintiffs do not have to fear that their speech will get them in trouble under § Adm. 2.04. If anything, § Adm. 2.04 works merely to limit plaintiffs’ free expression in state-owned facilities. It does not impose an impermissible “chilling effect” on free speech. Everyone is free to file for a permit without fear that such an application will bring about punitive criminal consequences.
 

 The second basis of the void for vagueness doctrine, that official decision-making should be limited by clear guidelines, merely allows plaintiffs to reiterate the argument they raised under the label of prior restraint that Wis.Admin.Code § Adm. 2.04 gives state officials “unbridled discretion.” I have addressed and rejected this same argument already and see nothing in the void for vagueness doctrine that would change my analysis of that question.
 

 V.
 
 Establishment and Free Exercise Clauses
 

 Plaintiffs argue that defendants violated both the establishment and free exercise clauses of the First Amendment by allowing a Christmas tree and menorah to remain in place in the capítol rotunda after they amended plaintiffs’ banner permit. Plaintiffs’ free exercise clause claim is groundless. Defendants did not prevent plaintiffs from exercising their religion in any way by amending the permit and requiring plaintiffs to reduce the size of their display.
 

 Plaintiffs’ establishment clause claim is foreclosed by
 
 Allegheny County v. Greater Pittsburgh ACLU,
 
 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989), in which the Supreme Court held that a county’s placement of an 18-foot menorah ánd small sign saluting liberty next to a 45-foot Christmas tree outside a city-county building did not violate the establishment clause. The Christmas tree, menorah and sign in the capítol rotunda had a size ratio similar to the display in
 
 Allegheny County.
 
 The only relevant distinction plaintiffs attempt to point out is a difference in the messages of the signs associated with the displays. The placard next' to the Christmas tree in
 
 Allegheny County
 
 focused on American liberty and freedom while the sign next to the menorah in the capítol rotunda explained the significance of Chanukah to the Jewish faith. Plaintiffs overemphasize the importance of the sign in the
 
 Allegheny County
 
 decision. It was not the sole item that saved the
 
 Allegheny County
 
 display from an establishment clause violation as plaintiffs would have the court believe. Rather, it confirmed only “what the context [of the display] already reveal[ed]: that the display of the menorah is not an endorsement of religious faith but simply a recognition of cultural diversity.”
 
 Id.
 
 at 619, 109 S.Ct. at 3114-15. The sign next to the menorah in the capítol did not change the fact that the Christmas tree and menorah as a unit would not be considered an endorsement of any faith and therefore would not be an establishment of religion.
 

 VI.
 
 Fourteenth Amendment
 
 — Due
 
 Process and Equal Protection
 

 Plaintiffs contend that defendants’ actions violated their rights to due process and equal protection of the law under the Fourteenth Amendment. Although plaintiffs do not develop either of these claims extensively in their briefs, I will address them as I understand them. It seems that plaintiffs are asserting two due process claims. The first appears to be nothing more than a repetition of plaintiffs’ argument that the court should strike down Wis.Admin.Code § Adm. 2.04 because it is unconstitutionally vague. It is true that the due process clause may provide the textual basis for finding a
 
 *1375
 
 vague statute unconstitutional,
 
 see Grayned v. City of Rockford,
 
 408 U.S. 104, 108, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972), but I have dismissed plaintiffs’ void for vagueness argument already and there is no need to discuss it any further.
 

 Plaintiffs’ second due process claim rests on their assertion that defendants deprived them of their property without due process of law when they removed plaintiffs’ banner and stored it in the capitol basement for several hours. Plaintiffs are not entitled to any relief on such a claim. As long as state remedies are available to plaintiffs to pursue post-deprivation remedies, neither intentional nor negligent deprivation of property gives rise to a constitutional violation.
 
 Daniels v. Williams,
 
 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986);
 
 Hudson v. Palmer,
 
 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The State of Wisconsin provides several post-deprivation procedures for challenging the taking of property. According to Article I, § 9 of the Wisconsin Constitution,
 

 Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without delay, conformably to the laws.
 

 Sections 893 of the Wisconsin Statutes contains provisions concerning tort actions to recover damages for wrongfully taken or detained personal property. The state has not refused to provide plaintiffs with a post-deprivation remedy and the existence of these remedies defeats any claim they might have that defendants deprived them of their property without due process of law. In any case, plaintiffs’ due process claim is exceedingly weak. Plaintiffs were without the banner for only two hours and likely could have had it back sooner had they asked for it. Such a claim trivializes the important protections the due process clause provides.
 

 Plaintiffs’ equal protection claim seems to be that Governor Thompson has never intervened in the display permit process before and that by engaging himself in the process with respect to plaintiffs’ banner, he has treated plaintiffs differently from other similarly situated permit applicants. Plaintiffs may be claiming that the governor singled them out for unfair and unequal treatment in violation of the equal protection clause because of their views on the separation of church and state. Unfair and purposefully discriminatory treatment by the governor would state an equal protection claim.
 
 See, e.g., Esmail v. Macrane,
 
 53 F.3d 176 (7th Cir.1995). However, plaintiffs have not raised a genuine dispute of material fact with respect to such unequal treatment. Plaintiffs have not shown how they were similarly situated to previous applicants or that they were the only ones treated differently than previous applicants. Citizens Concerned for Our Community had its display permit amended too.
 

 VII.
 
 Conspiracy
 

 Plaintiffs allege that defendants engaged in a conspiracy to deprive them of their constitutional rights, although they do not elaborate on this claim in their briefs and admit that “[i]t matters not whether the wrong is deemed a conspiracy.” Pl.’s Brief, dkt. # 44 at 7. To establish a claim of civil conspiracy, petitioner must show “a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties ‘to inflict a wrong against or injury upon another,’ and ‘an overt act that results in damage.’ ”
 
 Kunik v. Racine County,
 
 946 F.2d 1574, 1580 (7th Cir.1991) (quoting
 
 Rotermund v. United States Steel Corp.,
 
 474 F.2d 1139 (8th Cir.1973)). Claims of conspiracies to effect deprivations of civil or constitutional rights may be brought in federal court under 42 U.S.C. § 1983 or § 1985(3). Section 1983 requires proof of a conspiracy by state actors to deprive a petitioner of a constitutional right.
 
 Hampton v. Hanrahan,
 
 600 F.2d 600, 622-23 (7th Cir. 1979),
 
 rev’d in part on other grounds,
 
 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). Section 1985(3) requires proof of a racial or otherwise class-based discriminatory animus behind the conspirators’ actions.
 
 Griffin v. Breckenridge,
 
 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971);
 
 Hampton,
 
 600
 
 *1376
 
 F.2d at 623;
 
 Munson v. Frisks,
 
 754 F.2d 683, 694 (7th Cir.1985).
 

 Nothing in the undisputed facts permits an inference to be drawn that the alleged conspiracy was motivated by a racial or class-based discriminatory animus. Thus, the only possible manner in which plaintiffs can state a valid conspiracy claim is pursuant to § 1983. However, plaintiffs’ failure to state a cause of action with respect to any of their constitutional claims is dispositive of their conspiracy claim. Without deprivation of a constitutional right, plaintiffs cannot succeed on a § 1983 conspiracy claim.
 

 I conclude as a matter of law that plaintiffs cannot succeed on their claim that their constitutional rights were violated by the amendment of their permit requiring them to replace a large banner with a smaller one.
 

 ORDER
 

 IT IS ORDERED that the motion of defendants Tommy Thompson, James Klauser and Michael Metcalf for summary judgment is GRANTED. The clerk of court is instructed to enter judgment for defendants and close this case.
 

 [1]
 

 . Plaintiffs have tried to place into dispute whether they were informed that their permit was being amended.
 
 See
 
 Pl.'s response to Def.'s Proposed Findings of Fact and Conclusions of Law, # 24, dkt. # 52. Plaintiffs contend that they were not advised that their permits were being amended or that their banner had to be removed by noon on December 18, 1995.
 
 Id.
 
 In support of this assertion, plaintiffs cite paragraph two of the supplemental affidavit of Shelly Johnson, dkt. # 56. Although Johnson does state that she was not told that the banner needed to be removed by noon, she makes no mention of not being told about the amendment to the permit. I can find no other documents putting into dispute plaintiffs’ awareness of and the existence of the amendment to their display permit. In fact, Johnson states specifically in paragraph seven of her original affidavit, dkt. # 39, that she was told that displays would now have to be no larger than 30” to 40". Accordingly, I have accepted as undisputed defendants' proposed fact that defendants amended plaintiffs' permit and that they informed plaintiffs of this amendment.