In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 20-1811

ELIM ROMANIAN PENTECOSTAL CHURCH and LOGOS BAPTIST MINISTRIES,

*Plaintiffs-Appellants*,

*v.*

JAY ROBERT PRITZKER, Governor of Illinois,

*Defendant-Appellee*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 20 C 2782 — **Robert W. Gettleman**, *Judge*.

———————————

ARGUED JUNE 12, 2020 — DECIDED JUNE 16, 2020

———————————

Before EASTERBROOK, KANNE, and HAMILTON, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Two churches contend, in this suit under 42 U.S.C. §1983, that an executive order limiting the size of public assemblies (including religious services) to ten persons violates their rights under the Free Exercise Clause of the First Amendment, applied to the states

by the Fourteenth Amendment. The Governor of Illinois issued this order to reduce transmission of the coronavirus SARS-CoV-2, which causes the disease COVID-19. The disease is readily transmissible and has caused a global pandemic. As of June 16, 2020, 133,639 persons in Illinois have tested positive for COVID-19, and 6,398 of these have died. Epidemiologists believe that those numbers are under-counts—persons with no or mild symptoms may not be tested, some people die of the disease without being tested, and some deaths attributed to other causes may have been hastened or facilitated by the effect of COVID-19 weakening the immune system or particular organs.

Experts think that, without controls, each infected person will infect two to three others, causing an exponential growth in the number of cases. Because many of those cases require intensive medical care, infections could overwhelm the medical system. The World Health Organization, the Centers for Disease Control, and many epidemiologists recommend limiting the maximum size of gatherings (the Governor's cap of ten comes from a CDC recommendation), adopting a policy of social distancing (everyone staying at least six feet away from anyone not living in the same household—ten feet if the other person is singing or talking loudly), isolating people who have the disease, wearing face coverings so that people who have the disease but don't know it are less likely to infect others, and tracing the contacts of those who test positive. Reducing the number of people at gatherings protects those persons, and perhaps more important it protects others not at the gathering from disease transmitted by persons who contract COVID-19 by attending a gathering that includes infected persons.

Plaintiffs contend, however, that a limit of ten persons effectively forecloses their in-person religious services, even though they are free to hold multiple ten-person services every week, and that the Governor's proposed alternatives—services over the Internet or in parking lots while worshipers remain in cars—are inadequate for them.

Here is the relevant text of the order in question:

> All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for the limited purposes permitted by this Executive Order. Pursuant to current guidance from the CDC, any gathering of more than **ten** people is prohibited unless exempted by this Executive Order. Nothing in this Executive Order prohibits the gathering of members of a household or residence.
>
> All places of public amusement, whether indoors or outdoors, including but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, museums, arcades, fairs, children's play centers, playgrounds, funplexes, theme parks, bowling alleys, movie and other theaters, concert and music halls, and country clubs or social clubs shall be closed to the public.

Executive Order 2020-32 §2(3) (Apr. 30, 2020) (boldface in original). Section 2(5)(vi) adds that people are free to leave their homes

> [t]o engage in the free exercise of religion, provided that such exercise must comply with Social Distancing Requirements and the limit on gatherings of more than ten people in keeping with CDC guidelines for the protection of public health. Religious organizations and houses of worship are encouraged to use online or drive-in services to protect the health and safety of their congregants.

One other section of this order bears on religious activities. Section 2(12)(c) includes in the list of "essential" functions exempt from the ten-person cap:

> Businesses and religious and secular nonprofit organizations, including food banks, when providing food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals, individuals who need assistance as a result of this emergency, and people with disabilities[.]

Religious services, too, are deemed "essential," see §2(5)(vi), which is why they can proceed while concerts are forbidden, but they have not been exempted from the size limit.

The churches contend that these rules burden the free exercise of their faith, which requires adherents to assemble in person, and discriminates against religious services compared with the many economic and charitable activities that the Governor has exempted from the ten-person limit. The churches are particularly put out that their members may assemble to feed the poor but not to celebrate their faith. A district court, however, concluded that Executive Order 2020-32 is neutral with respect to religion and supported by the compelling need to safeguard the public health during a pandemic. The court denied the motion for a preliminary injunction. 2020 U.S. Dist. LEXIS 84348 (N.D. Ill. May 13, 2020). Plaintiffs appealed under 28 U.S.C. §1292(a)(1).

We denied the churches' motion for an injunction pending appeal, with this explanation:

> Based on this court's preliminary review of this appeal for purposes of this motion, we find that plaintiffs have not shown a sufficient likelihood of success on the merits to warrant the extraordinary relief of an injunction pending appeal. The Governor's Executive Order 2020-32 responds to an extraordinary pub-

lic health emergency. See generally *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). The Executive Order does not discriminate against religious activities, nor does it show hostility toward religion. It appears instead to impose neutral and generally applicable rules, as in *Employment Division v. Smith*, 494 U.S. 872 (1990). The Executive Order's temporary numerical restrictions on public gatherings apply not only to worship services but also to the most comparable types of secular gatherings, such as concerts, lectures, theatrical performances, or choir practices, in which groups of people gather together for extended periods, especially where speech and singing feature prominently and raise risks of transmitting the COVID-19 virus. Worship services do not seem comparable to secular activities permitted under the Executive Order, such as shopping, in which people do not congregate or remain for extended periods. Further, plaintiffs-appellants may not obtain injunctive relief against the Governor in federal court on the basis of the Illinois Religious Freedom Restoration Act. See *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984).

No. 20-1811 (7th Cir. May 16, 2020). We expedited briefing and oral argument.

Before the case could be argued, the Governor replaced Executive Order 2020-32 with Executive Order 2020-38 (May 29, 2020), which permits the resumption of all religious services. Section 4(a) of Order 2020-38 contains this exemption:

This Executive Order does not limit the free exercise of religion. To protect the health and safety of faith leaders, staff, congregants and visitors, religious organizations and houses of worship are encouraged to consult and follow the recommended practices and guidelines from the Illinois Department of Public Health. As set forth in the IDPH guidelines, the safest practices for religious organizations at this time are to provide services online, in a drive-in format, or outdoors (and consistent with social distancing requirements and guidance regarding wearing face coverings), and to limit indoor services to 10 people. Religious organizations are encouraged to take steps to ensure social

distancing, the use of face coverings, and implementation of other public health measures.

What used to be a cap of ten persons became a recommendation. Because this section is an "exemption," none of Executive Order 2020-38's rules applies to religious exercise. The guidelines, issued on May 28 and available at https://www.dph.illinois.gov/covid19/community-guidance/places-worship-guidance, contain eight single-spaced pages of recommendations but do not impose any legal obligation.

Illinois contends that Executive Order 2020-38 makes this suit moot, because it gives the churches all of the relief they wanted from a judge. Plaintiffs observe, however, that the Governor could restore the approach of Executive Order 2020-32 as easily as he replaced it—and that the "Restore Illinois Plan" (May 5, 2020) reserves the option of doing just this if conditions deteriorate. Executive Order 2020-38 moved Illinois to Phase 3 of this Plan, which cautions that some things "could cause us to move back":

> IDPH will closely monitor data and receive on-the-ground feedback from local health departments and regional healthcare councils and will recommend moving back to the previous phase based on the following factors:
>
> • Sustained rise in positivity rate [of COVID-19 test results]
> • Sustained increase in hospital admissions for COVID-19 like illness
> • Reduction in hospital capacity threatening surge capabilities
> • Significant outbreak in the region that threatens the health of the region

Voluntary cessation of the contested conduct makes litigation moot only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to re-

cur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000). Otherwise the defendant could resume the challenged conduct as soon as the suit was dismissed. The list of criteria for moving back to Phase 2 (that is, replacing the current rules with older ones) shows that it is not "absolutely clear" that the terms of Executive Order 2020-32 will never be restored. It follows that the dispute is not moot and that we must address the merits of plaintiffs' challenge to Executive Order 2020-32 even though it is no longer in effect.

The churches contend that any limit on religious gatherings is permissible only if supported by a compelling interest, which they say is lacking. Yet *Employment Division v. Smith*, 494 U.S. 872 (1990), holds that the Free Exercise Clause does not require a state to accommodate religious functions or exempt them from generally applicable laws. The Justices recently granted certiorari in a case presenting the question whether *Smith* should be overruled, *Fulton v. Philadelphia*, 140 S. Ct. 1104 (2020), but *Fulton* will not be argued until next fall. Unless the Justices overrule or modify *Smith*, we must implement its approach.

Congress established rules more favorable to religion through the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb–4, but *Boerne v. Flores*, 521 U.S. 507 (1997), holds that those rules cannot be applied to the states. Illinois has itself created rules more favorable to religion through the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 to 35/30, and plaintiffs want to take advantage of that statute. Given the Eleventh Amendment and principles of sovereign immunity, however, a federal court cannot issue relief against a state under state law. See, e.g., *Pennhurst*

*State School & Hospital v. Halderman*, 465 U.S. 89 (1984). Plaintiffs maintain that *Pennhurst* is irrelevant because Illinois has consented to the enforcement of the Illinois Religious Freedom Restoration Act, thus waiving its sovereign immunity. Consent to be sued in state court does not imply consent to be sued in federal court, however; that takes a "clear declaration". See, e.g., *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 676 (1999) (citing other cases). Section 35/20 provides:

> If a person's exercise of religion has been burdened in violation of this Act, that person may assert that violation as a claim or defense in a judicial proceeding and may obtain appropriate relief against a government. A party who prevails in an action to enforce this Act against a government is entitled to recover attorney's fees and costs incurred in maintaining the claim or defense.

See also §35/10(b)(2). This language authorizes judicial relief but does not clearly authorize suit against the state in federal court. As a result, neither the federal nor the state Religious Freedom Restoration Act can be applied in this case.

The vital question therefore is whether Executive Order 2020-32 discriminates against religion. Funerals, weddings, and similar activities are subject to the same size limit that applies to worship services. Illinois did not set out to disadvantage religious services compared with secular events. Nor does the order discriminate among faiths. Cf. *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993).

Plaintiffs maintain, however, that the ten-person cap disfavors religious services compared with, say, grocery shopping (more than ten people at a time may be in a store) or warehouses (where a substantial staff may congregate to prepare and deliver the goods that retail shops sell). If those

businesses, and other essential functions such as feeding and housing the poor under §2(12)(c), may place ten unrelated persons in close contact, it amounts to disparate treatment that a religious service cannot do so as well.

For its part, Illinois reminds us how Executive Order 2020-32 §2(3) itself classifies religious worship: with other indoor public gatherings of unrelated persons. At least worship services can proceed (with a size limit), while concerts, movies, and similar events are forbidden.

So what is the right comparison group: grocery shopping, warehouses, and soup kitchens, as plaintiffs contend, or concerts and lectures, as Illinois maintains? Judges of other appellate courts have supported both comparisons. Plaintiffs point us to two opinions of the Sixth Circuit plus two opinions dissenting from orders denying injunctions pending appeal. See *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020); *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020); *South Bay United Pentecostal Church v. Newsom*, 2020 U.S. App. LEXIS 16464 (9th Cir. May 22, 2020) (Collins, J., dissenting); *South Bay United Pentecostal Church v. Newsom*, No. 19A1044 (U.S. May 29, 2020) (Kavanaugh, J., joined by Thomas & Gorsuch, JJ., dissenting). Illinois relies on the majorities in *South Bay United Pentecostal Church*: the Ninth Circuit's panel did not provide much analysis when denying the motion for an injunction, nor did a majority of the Supreme Court, but Chief Justice Roberts filed a concurring opinion with these observations:

> Although California's guidelines place restrictions on places of worship, … [s]imilar or more severe restrictions apply to comparable secular gatherings, including lectures, concerts, movie showings, spectator sports, and theatrical performances, where large groups of people gather in close proximity for extended

> periods of time. And the Order exempts or treats more leniently only dissimilar activities, such as operating grocery stores, banks, and laundromats, in which people neither congregate in large groups nor remain in close proximity for extended periods.

We line up with Chief Justice Roberts.

It would be foolish to pretend that worship services are exactly like any of the possible comparisons, but they seem most like other congregate functions that occur in auditoriums, such as concerts and movies. Any of these indoor activities puts members of multiple families close to one another for extended periods, while invisible droplets containing the virus may linger in the air. Functions that include speaking and singing by the audience increase the chance that persons with COVID-19 may transmit the virus through the droplets that speech or song inevitably produce. As Chief Justice Roberts observed, concerts and church services differ from grocery stores and pharmacies, "in which people neither congregate in large groups nor remain in close proximity for extended periods."

The churches reply that people *do* remain together for extended periods in warehouses, and potentially in office settings (though most offices contain spaces that provide social distancing). It is not clear to us that warehouse workers engage in the sort of speech or singing that elevates the risk of transmitting the virus, or that they remain close to one another for extended periods, but some workplaces present both risks. Meatpacking plants and nursing homes come to mind, and they have been centers of COVID-19 outbreaks. But it is hard to see how food production, care for the elderly, or the distribution of vital goods through warehouses could be halted.

Reducing the rate of transmission would not be much use if people starved or could not get medicine. That's also why soup kitchens and housing for the homeless have been treated as essential. Those activities *must* be carried on in person, while concerts can be replaced by recorded music, movie-going by streaming video, and large in-person worship services by smaller gatherings, radio and TV worship services, drive-in worship services, and the Internet. Feeding the body requires teams of people to work together in physical spaces, but churches can feed the spirit in other ways.

Perhaps a state could differentiate between the maximum gathering permitted in a small church and a cathedral with seats for 3,000, but we do not evaluate orders issued in response to public-health emergencies by the standard that might be appropriate for years-long notice-and-comment rulemaking. See *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), which sustains a public-health order against a constitutional challenge. Perhaps with more time—and more data from contact tracing—Illinois could figure out just how dangerous religious services are compared with warehouses and similar activities, but no one contends that such data were available when Executive Order 2020-32 was promulgated (or, for that matter, now).

So we do not deny that warehouse workers and people who assist the poor or elderly may be at much the same risk as people who gather for large, in-person religious worship. Still, movies and concerts seem a better comparison group, and by that standard the discrimination has been in favor of religion. While all theaters and concert halls in Illinois have been closed since mid-March, sanctuaries and other houses of worship were open, though to smaller gatherings. And

under Executive Order 2020-38 all arrangements for worship are permitted while schools, theaters, and auditoriums remain closed. Illinois has not discriminated against religion and so has not violated the First Amendment, as *Smith* understands the constitutional requirements.

Plaintiffs present some additional arguments, which have been considered but need not be discussed separately.

AFFIRMED