20-3572; 20-3590
Agudath Israel of America; The Roman Catholic Diocese v. Cuomo

E.D.N.Y. – Bklyn.
20-cv-4834
Matsumoto, J.
20-cv-4844
Garaufis, J.

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

———————

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of November, two thousand twenty.

Present:
> Raymond J. Lohier, Jr.,
> Michael H. Park,
> > *Circuit Judges*,
> Jed S. Rakoff,*
> > *Judge.*

———————————————————————————————

Agudath Israel of America, Agudath Israel of Kew Garden Hills, Agudath Israel of Madison, Agudath Israel of Bayswater, Rabbi Yisroel Reisman, Rabbi Menachem Feifer, Steven Saphirstein,

> > *Plaintiffs-Appellants*,
> > v.                                                                 20-3572

Andrew M. Cuomo, Governor of the State of New York, in his official capacity,
> > *Defendant-Appellee*.

———————————————————————————————

The Roman Catholic Diocese of Brooklyn, New York,

> > *Plaintiff-Appellant*,
> > v.                                                                 20-3590

Governor Andrew M. Cuomo, in his official capacity,

> > *Defendant-Appellee*.

———————————————————————————————

* Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

These appeals, which are being heard in tandem, arise from the ongoing COVID-19 pandemic. The pandemic has caused more than 25,000 deaths in New York State and more than 10,000 deaths in Brooklyn and Queens alone. In response to a recent spike in cases concentrated in parts of Brooklyn, Queens, and other areas, Governor Andrew Cuomo issued an executive order to limit further spread of the virus in these COVID-19 "hotspots."

The executive order directs the New York State Department of Health to identify yellow, orange, and red "zones" based on the severity of outbreaks, and it imposes correspondingly severe restrictions on activity within each zone. For example, the order provides that in "red zones," non-essential gatherings of any size must be cancelled, non-essential businesses must be closed, schools must be closed for in-person instruction, restaurants cannot seat customers, and houses of worship may hold services but are subject to a capacity limit of 25 percent of their maximum occupancy or 10 people, whichever is fewer.

The Appellants—Agudath Israel of America, Agudath Israel of Kew Garden Hills, Agudath Israel of Madison, Agudath Israel of Bayswater, Rabbi Yisroel Reisman, Rabbi Menachem Feifer, Steven Saphirstein (collectively, "Agudath Israel"), and The Roman Catholic Diocese of Brooklyn, New York (the "Diocese")—each challenged the executive order as a violation of the Free Exercise Clause of the First Amendment. In each case, the district court denied the Appellants' motion for a preliminary injunction against the enforcement of the order. The Appellants now move for emergency injunctions pending appeal and to expedite their appeals, after an applications Judge on our Court denied their requests for an administrative stay, No. 20-3572, doc. 30; No. 20-3590, doc. 29.

Preliminarily, we conclude that Agudath Israel did not "move first in the district court for" an order "granting an injunction while an appeal is pending" before filing with this Court its present motion for an injunction pending appeal. Fed. R. App. P. 8(a)(1)(C). Instead, Appellant moved for a preliminary injunction pending the district court's final judgment. In its briefs and at oral argument before this panel, moreover, Agudath Israel has not explained or otherwise justified its failure to comply with the straightforward requirement of Rule 8(a). Agudath Israel also has failed to demonstrate that "moving first in the district court would be impracticable," Fed. R. App. P. 8(a)(2)(A), or even futile, particularly in light of the fact that a full eleven days elapsed after the district court's ruling before Agudath Israel sought relief from this Court. We deny Agudath Israel's motion for these procedural reasons. *See Hirschfeld v. Bd. of Elections in N.Y.*, 984 F.2d 35, 38 (2d Cir. 1993).

We deny the Diocese's motion for an injunction pending appeal—and would deny the motion filed by Agudath Israel if it were properly before us—for the reasons that follow.

As an initial matter, an injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). To obtain an injunction from a district court, movants generally bear the burden of showing that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Id.* at 20.

2

To obtain a stay of a district court's order pending appeal, more is required, including a "strong showing that [the movant] is likely to succeed on the merits." *New York v. U.S. Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020). The motions at issue here seek a remedy still more drastic than a stay: an injunction issued in the first instance by an appellate court. "Such a request demands a significantly higher justification than a request for a stay because, unlike a stay, an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts." *Respect Maine PAC v. McKee*, 562 U.S. 996, 996 (2010) (quotation marks omitted).

"The Free Exercise Clause, which applies to the States under the Fourteenth Amendment, protects religious observers against unequal treatment and against laws that impose special disabilities on the basis of religious status." *Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2254 (2020) (quotation marks omitted); *see Cent. Rabbinical Cong. of U.S. & Canada v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) ("[T]he Free Exercise Clause . . . protects the performance of (or abstention from) physical acts that constitute the free exercise of religion: assembling with others for a worship service, participating in sacramental use of bread and wine, proselytizing, abstaining from certain foods or certain modes of transportation.") (quotation marks omitted)). But the Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability," *Emp't Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 879 (1990) (quotation marks omitted), "even if the law has the incidental effect of burdening a particular religious practice," *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

"A law burdening religious conduct that is *not* both neutral and generally applicable, however, is subject to strict scrutiny." *Cent. Rabbinical*, 763 F.3d at 193 (citing *Lukumi*, 508 U.S. at 531–32). "A law is not neutral if it is specifically directed at a religious practice." *Id.* (cleaned up). Similarly, a law is "not generally applicable if it is substantially underinclusive such that it regulates religious conduct while failing to regulate secular conduct that is at least as harmful to the legitimate government interests purportedly justifying it." *Id.* at 197.

The Court fully understands the impact the executive order has had on houses of worship throughout the affected zones. Nevertheless, the Appellants cannot clear the high bar necessary to obtain an injunction pending appeal. The challenged executive order establishes zones based on the severity of the COVID-19 outbreaks in different parts of New York. Within each zone, the order subjects religious services to restrictions that are similar to or, indeed, *less severe than* those imposed on comparable secular gatherings. *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, *C.J.*, concurring) (denying emergency injunctive relief to houses of worship that were subject to similar or less severe restrictions than those applicable to comparable secular gatherings); *see also Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 342, 346–47 (7th Cir. 2020) (upholding an order that capped religious gatherings at ten people where the most comparable activities—those "that occur in auditoriums, such as concerts and movies"— had been banned completely); *cf. Commack Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 210–11 (2d Cir. 2011) (holding that a Kosher food labeling act was a neutral and generally applicable law subject to rational basis review because it applied

to "food purchased by individuals of many different religious beliefs" and impacted consumers who purchased kosher products "for reasons unrelated to religious observance").

Thus, while it is true that the challenged order burdens the Appellants' religious practices, the order is not "substantially underinclusive" given its greater or equal impact on schools, restaurants, and comparable secular public gatherings. *Cf.* No. 20-3590, doc. 20, Ex. L at 2 (Governor Cuomo criticizing the order's policy of "clos[ing] every school" as "a policy being cut by a hatchet," not "a scalpel"). To the contrary, the executive order "extend[s] well beyond isolated groups of religious adherents" to "encompass[] *both* secular and religious conduct." *Cent. Rabbinical*, 763 F.3d at 195.

In a dissent from this Court's order, our colleague asserts that the executive order is subject to strict scrutiny because it violates the minimum requirement of neutrality. The fact that theaters, casinos, and gyms are more restricted than places of worship, the dissent reasons, "only highlights the fact that the order is not neutral towards religion." But this view is undermined by recent precedent, which makes clear that COVID-19 restrictions that treat places of worship on a par with or more favorably than comparable secular gatherings do not run afoul of the Free Exercise Clause. *See, e.g.*, *S. Bay*, 140 S. Ct. at 1613 (Roberts, *C.J.*, concurring) (guidelines that "place[d] restrictions on places of worship" less severe than those on comparable gatherings "appear consistent with the Free Exercise Clause"); *see also Elim*, 962 F.3d at 347 (same).

The dissent attempts to distinguish *South Bay* as having been decided during the early stages of the pandemic while local governments were actively shaping their response to changing facts on the ground. But here, too, the executive order is a response to rapidly changing facts on the ground. For several months, New York's "limits and restrictions lessen[ed] and evolve[d] as the curve continue[d] to flatten," and the State's "limits and restrictions . . . increase[d]" only when "a review of the data indicate[d] a trend of increasing COVID-19 cases or spikes of cases in [the] cluster areas" targeted by the challenged executive order. No. 20 Civ. 4834 (KAM) (E.D.N.Y. 2020), doc. 12 at 14, 18–19. In any event, *South Bay* did not draw a distinction between the pandemic in its early or late stage. Its central relevant facts exist in New York in November 2020 just as they existed in California in May 2020: There is no vaccine or known cure for COVID-19; the pandemic has killed hundreds of thousands of Americans; and "[b]ecause people may be infected but asymptomatic, they may unwittingly infect others." *S. Bay*, 140 S. Ct. at 1613 (Roberts, *C.J.*, concurring).

Upon due consideration, and for the foregoing reasons, it is hereby ORDERED that the Appellants' motions for injunctions pending appeal are DENIED. Among other infirmities in their arguments, the Appellants have failed to meet the requisite standard for an injunction pending appeal. *See New York v. U.S. Dep't of Homeland Sec.*, 974 F.3d at 214. It is further ORDERED that the motion to expedite the appeals is GRANTED.

We address here only the Appellants' motions for injunctions pending appeal and to expedite their appeals, not their underlying appeals challenging the district courts' refusals to provide preliminary injunctive relief. With respect to the underlying appeals, the parties have agreed to the following

merits briefing schedule: Appellants' briefs are due Tuesday, November 17, 2020; Appellee's brief is due Tuesday, December 8, 2020; Appellants' reply briefs are due Monday, December 14, 2020, and the matter is to be calendared as early as the week of December 14, 2020.

Judge Park dissents from the denial of the motions for injunctions pending appeal.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

Park, *Circuit Judge*, dissenting:

In response to the COVID-19 pandemic, the Governor of New York issued an executive order imposing strict capacity limits on "houses of worship" in certain specified "zones." Those restrictions apply only to religious institutions; in the same zones, pet shops, liquor stores, and other businesses the Governor considers "essential" remain open, free from any capacity limits. By singling out "houses of worship" for unfavorable treatment, the executive order specifically and intentionally burdens the free exercise of religion in violation of the First Amendment. I would thus grant the motions for injunctive relief pending appeal.

I

Discrimination against religion is "odious to our Constitution." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2025 (2017). "Official action that targets religious conduct for distinctive treatment" must thus satisfy "the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534, 546 (1993).

A

First, the executive order fails the "minimum requirement of neutrality" towards religion, which means that a government policy may "not discriminate on its face." *Id*. at 533. The order authorizes the New York State Department of Health to designate "areas in the State that require enhanced public health restrictions" as red, orange, or yellow zones. N.Y. Exec. Order No. 202.68. In each zone, the order subjects only "houses of worship" to special "capacity limit[s]": in red zones, "25% of maximum occupancy or 10 people, whichever is fewer"; in orange zones, "the lesser of 33% of maximum occupancy or 25 people"; and in yellow zones, "50% of . . . maximum occupancy." *Id.* But in the very same zones, numerous businesses deemed "essential" may operate with no such restrictions.[1] This disparate treatment of religious and secular institutions is plainly not neutral.

The Governor's public statements confirm that he intended to target the free exercise of religion. The day before issuing the order, the Governor said that if the "ultra-Orthodox [Jewish] community" would not agree to enforce the rules, "then we'll close the institutions down."[2] *See Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1731 (2018) (factors relevant to the assessment of neutrality include "the specific series of events leading to the enactment or

---

[1] *See Guidance for Determining Whether a Business Enterprise Is Subject to a Workforce Reduction Under Recent Executive Orders*, N.Y. State Dep't of Econ. Dev. (updated Oct. 23, 2020), https://esd.ny.gov/guidance-executive-order-2026; *Guidance for Determining Whether a Business Enterprise Is Subject to a Workforce Reduction Under Executive Order 202.68*, N.Y. State Dep't of Econ. Dev. (updated Oct. 7, 2020), https://esd.ny.gov/ny-cluster-action-initiative-guidance; Hearing Tr. at 81–82, No. 20-cv-4844 (E.D.N.Y. Oct. 15, 2020).

[2] *Governor Cuomo Updates New Yorkers on State's Progress During COVID-19 Pandemic*, Off. of the Governor (Oct. 5, 2020), https://www.governor.ny.gov/news/video-audio-photos-rush-transcript-governor-cuomo-updates-new-yorkers-states-progress-during-1.

official policy in question" and "contemporaneous statements made by members of the decisionmaking body").

The Governor argues that the executive order should nonetheless be subject to only rational-basis review because it treats houses of worship "more favorably" than "non-essential" secular businesses, like theaters, casinos, and gyms. But this only highlights the fact that the order is not neutral towards religion. Rational-basis review applies when a generally applicable policy incidentally burdens religion, but a policy that expressly *targets* religion is subject to heightened scrutiny. *See Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 194 (2d Cir. 2014). Here, the executive order does not impose neutral public-health guidelines, like requiring masks and distancing or limiting capacity by space or time. Instead, the Governor has selected some businesses (such as news media, financial services, certain retail stores, and construction) for favorable treatment, calling them "essential," while imposing greater restrictions on "non-essential" activities and religious worship. Such targeting of religion is subject to strict scrutiny.

*South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (mem.), is not to the contrary. Summary decisions of the Supreme Court are precedential only as to "the precise issues presented and necessarily decided." *Mandel v. Bradley*, 432 U.S. 173, 176 (1977). Petitioners in *South Bay* sought a writ of injunction, which is granted only when "the legal rights at issue are indisputably clear." *Id*. at 1613 (Roberts, *C.J.*, concurring) (citation omitted). Here, Appellants seek injunctions pending appeal, for which they need to show, at most, a "'substantial' likelihood" of success on the merits. *United for Peace & Just. v. City of New York*, 323 F.3d 175, 178 (2d Cir. 2003). In addition, the motions before this Court arise from quite different circumstances. *South Bay* was decided during the early stages of the pandemic, when local governments were struggling to prevent the healthcare system from being overwhelmed and were "actively shaping their response to changing facts on the ground." 140 S. Ct. at 1614 (Roberts, *C.J.*, concurring). By contrast, the Governor's stated concern here is maintaining localized containment. In April, New York reported a seven-day average of nearly 1,000 deaths per day from COVID-19.[3] Six months later, that average has not exceeded 20 for months. *See id.*

Finally, the Governor overstates the import of *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), which upheld a mandatory vaccination law against a substantive due process challenge. *Jacobson* was decided before the First Amendment was incorporated against the states, and it "did not address the free exercise of religion." *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015). Indeed, the Court specifically noted that "even if based on the acknowledged police powers of a state," a public health measure "must always yield in case of conflict with . . . any right which [the Constitution] gives or secures." 197 U.S. at 25. *Jacobson* does not call for indefinite

---

[3] *See New York Covid Map and Test Count*, N.Y. Times (updated Nov. 4, 2020), https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-cases.html.

deference to the political branches exercising extraordinary emergency powers, nor does it counsel courts to abdicate their responsibility to review claims of constitutional violations.

B

Applying strict scrutiny, there is little doubt that the absolute capacity limits on houses of worship are not "narrowly tailored." *Lukumi*, 508 U.S. at 546. As the Governor himself admitted, the executive order is "not a policy being written by a scalpel," but rather is "a policy being cut by a hatchet." *See* Appellant's Br., No. 20-3590, at 4.

First, the fixed capacity limits do not account in any way for the sizes of houses of worship in red and orange zones. For example, two of the Diocese's churches in red or orange zones as of October 8, 2020 seat more than a thousand people. But the order nonetheless subjects them to the same 10-person limit in red zones applicable to a church that seats 40 people. Such a blunderbuss approach is plainly not the "least restrictive means" of achieving the State's public safety goal. *Lukumi*, 508 U.S. at 578.

The fixed capacity limits also bear little relation to the particular COVID-19 transmission risks the Governor identifies with houses of worship, such as "singing or chanting" and mingling before and after services. Churchgoers and daveners remain subject to generally applicable distancing and mask requirements, so the additional capacity limits assume that worshippers— unlike participants in "essential" activities—will not comply with such restrictions. The Governor may not, however, "assume the worst when people go to worship but assume the best when people go to work or go about the rest of their daily lives in permitted social settings." *Roberts v. Neace*, 958 F.3d 409, 414 (6th Cir. 2020). Here, Appellants have made clear that they would follow any generally applicable public-health restrictions.[4]

II

The remaining injunction factors also support granting the motions. Appellants presented unrebutted evidence that the executive order will prevent their congregants from freely exercising their religion. And "[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)).[5]

---

[4] For example, the Diocese presented evidence that, even before the order, it had voluntarily restricted attendance to 25% of building capacity and required masks during Mass; it has also "agreed to accept potential further restrictions (such as eliminating congregant singing and choirs during Mass) as a condition of injunctive relief." Appellant's Br., No. 20-3590, at 4.

[5] The district court in the *Agudath Israel* case found that plaintiffs had not demonstrated irreparable harm because "the Orthodox community has previously complied with the total lockdown" and they could "continue to observe their religion" with "modifications." Tr. of Proceedings at 66, No. 20-cv-04834 (E.D.N.Y. Oct. 9, 2020). This was error, in light of which plaintiffs reasonably believed that another motion for injunction in the district court would be futile. *See, e.g.*, *Hernandez v. Comm'r*, 490 U.S. 680, 699

3

Finally, the balance of equities and public interest favor Appellants. The question is not whether the State may take generally applicable public-health measures, but whether it may impose greater restrictions only on houses of worship. It may not.

I respectfully dissent from the denial of the motions for injunctions pending appeal.

---

(1989) ("It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.").