NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 15 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CALVARY CHAPEL LONE MOUNTAIN, | No.   20-16274 |
| Plaintiff-Appellant, | D.C. No. 2:20-cv-00907-RFB-VCF |
| v. | |
| STEVE SISOLAK; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Richard F. Boulware II, District Judge, Presiding

Argued and Submitted December 8, 2020
San Francisco, California

Before:  BOGGS,** M. SMITH, and BENNETT, Circuit Judges.

Calvary Chapel Lone Mountain (Calvary Chapel) appeals the district court's order denying its motion for preliminary injunction.  Because the parties are familiar with the facts, we do not recount them here, except as necessary to provide context to our ruling.  We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*       The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

1. Pursuant to our concurrently filed opinion in *Calvary Chapel Dayton Valley v. Sisolak*, No. 20-16169, Directive 021 (the Directive) is not neutral or generally applicable.[1] *See Roman Catholic Diocese of Brooklyn v. Cuomo*, --- S. Ct. ----, 2020 WL 6948354, at *2 (2020) (per curiam). The Directive treats numerous secular activities and entities significantly better than religious worship services. We must, therefore, review the Directive under strict scrutiny. Although slowing the spread of COVID-19 is a compelling interest, the Directive is not narrowly tailored to serve that interest because, for example, the Directive could have tied the maximum attendance allowed at a religious service to the size of the house of worship. *See id.* Accordingly, the Directive does not survive strict scrutiny review.[2]

---

[1] The district court properly analyzed Calvary Chapel's Equal Protection Claim as a Free Exercise claim.

[2] Although the Directive is no longer in effect, we held in an order denying the State's motion to dismiss that Calvary Chapel's case is not moot. Governor Sisolak could restore the Directive's restrictions just as easily as he replaced them, or impose even more severe restrictions. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); *see also Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 344–45 (7th Cir. 2020). In fact, Governor Sisolak has issued numerous emergency directives after the Directive. For example, Directive 035, which is currently in effect, limits houses of worship to "the lesser of 25% of the listed fire code capacity or 50 persons." In contrast, it imposes only a 25% limit on commercial entities such as casinos; bowling alleys, arcades, miniature golf facilities, amusement parks, and theme parks; restaurants, food establishments, breweries, distilleries, and wineries; museums, art galleries, zoos, and aquariums; and gyms, fitness facilities, and fitness studios. **Declaration of Emergency for Directive 035, https://gov.nv.gov/News/Emergency_Orders/2020/2020-11-24_-_COVID19_Emergency_Declaration_Directive_035**. Although the only directive before us today is the Directive, we emphasize that all subsequent

2. The district court properly declined to exercise supplemental jurisdiction over Calvary Chapel's state constitutional claim. Calvary Chapel's claim raises a novel and complex issue of Nevada law, *see* 28 U.S.C. § 1367(c)(1), and a federal court may not "instruct[] state officials on how to conform their conduct to state law," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

3. For the reasons noted, Calvary Chapel has demonstrated a likelihood of success on the merits of its Free Exercise claim. It has also established that the occupancy limitations contained in the Directive—if enforced—will cause irreparable harm, and that the issuance of an injunction is in the public interest. *See Roman Catholic Diocese*, 2020 WL 6948354, at \*3; *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Accordingly, we reverse the district court, instruct the district court to employ strict scrutiny review to its analysis of the Directive, and preliminarily enjoin the State from imposing attendance limitations on in-person services in houses of worship that are less favorable than 25% of the fire-code capacity. The district court may modify this preliminary injunctive relief, consistent with this disposition and general equitable principles. *See Winter*, 555 U.S. at 20. We encourage the district court to act expeditiously in connection with any such modification.

---

directives are subject to the same principles outlined in this disposition, and that many of the issues we identify in the Directive persist in Directive 035.

3

This order shall act as and for the mandate of this court.

REVERSED AND REMANDED.