In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-1208

DENIS NAVRATIL, et al.,

*Plaintiffs-Appellants*,

*v.*

CITY OF RACINE and CORY MASON,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:21-cv-00181-SCD — **Stephen C. Dries**, *Magistrate Judge*.

ARGUED NOVEMBER 30, 2023 — DECIDED MAY 6, 2024

Before HAMILTON, KIRSCH, and PRYOR, *Circuit Judges*.

HAMILTON, *Circuit Judge*. On April 24, 2020, plaintiff-appellant Denis Navratil attended a rally at the Wisconsin State Capitol to protest the recent statewide "Safer at Home Order" that limited public gatherings, travel, and business operations to combat the COVID-19 pandemic. The rally itself was a violation of the Safer at Home Order. Also, a permit is required to hold rallies at the State Capitol, and the permit application for the April 24 rally had been denied because of

the COVID-19 pandemic and the Safer at Home Order. By April 24, 2020, 291 people had died of COVID-19 in the state of Wisconsin. There were over 5,000 confirmed cases in the state, with more than 200 new cases being diagnosed each day.[1]

In this lawsuit, Denis Navratil, his wife Dimple Navratil, and their business, Dimple's LLC, have asserted several constitutional claims against the City of Racine and Mayor Cory Mason, as well as a defamation claim against Mason. At the heart of all the claims was the city's decision not to give an emergency grant to Dimple's LLC because Denis had gone to the April 24 rally. Presiding with the consent of the parties under 28 U.S.C. § 636(c), a magistrate judge granted summary judgment for both defendants on all claims. Plaintiffs have appealed, and we affirm.

I.  *Factual and Procedural History*

Because we are reviewing a grant of summary judgment, plaintiffs as the non-moving parties are entitled to the benefit of all conflicts in the evidence and to reasonable inferences in their favor. *Whitaker v. Wisconsin Dep't of Health Services*, 849 F.3d 681, 682 (7th Cir. 2017). All facts are drawn from the district court's account of the facts for purposes of summary judgment unless otherwise noted. See *Navratil v. City of Racine*, No. 21-cv-181-SCD, 2023 WL 9190207 (E.D. Wis. Jan. 5, 2023).

---

[1] Statistics are from Johns Hopkins University & Medicine's Coronavirus Resource Center's Data Timeline for the state of Wisconsin, https://coronavirus.jhu.edu/region/us/wisconsin [https://perma.cc/T6MM-8N6T].

The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. In an effort to slow the virus's spread, Wisconsin Governor Tony Evers and Department of Health Services Secretary-designee Andrea Palm issued the Safer at Home Order, which prohibited people from going out in public except to perform limited "essential activities." The order caused many non-essential businesses, including restaurants and retail stores, to close temporarily.

The City of Racine, Wisconsin made emergency funds available to mitigate economic damage to non-essential businesses forced to close under the Safer at Home Order. As part of the grant application process, Racine Mayor Cory Mason met with an ad hoc committee to review grant applications. Mayor Mason and committee members reviewed applications from businesses that met certain objective criteria to qualify for the funds. The funds available for emergency grants were quite limited, though. Mayor Mason had sole discretion to determine which qualifying applicants received emergency funding. The city could not guarantee that a business meeting the qualifying criteria would receive funding.

Plaintiffs Denis and Dimple Navratil are married and operate Dimple's Fine Imports in Racine, Wisconsin. Dimple's Fine Imports is an import and gift store that is under the control of Dimple's LLC. Dimple is the sole owner of Dimple's LLC, and Dennis works as the store manager.

Dimple applied for emergency funding through Dimple's LLC in March 2020 during the first round of city grants. The city distributed $250,000 to eighteen different businesses, but Dimple's LLC was not awarded a grant in that initial round of funding.

On April 24, 2020, Dimple again applied for funding through the LLC during the second round of city grants. That was the same day that Denis attended the "Wisconsin Freedom Rally #Reopen Wisconsin" in Madison, Wisconsin.

The rally took place at the Wisconsin State Capitol to protest the restrictions imposed by the Safer at Home Order, including business closures. The rally itself violated the Safer at Home Order's ban on public gatherings. Also, for large events at the State Capitol, a permit is required under Wisconsin Statute § 16.845 and Wisconsin Administrative Code § 2.04. The April 24 rally organizers were denied a permit because the gathering would violate the Safer at Home Order.

At the April 24 rally, Denis spoke with a television news reporter, and a video clip of the interview was aired on a local news station. Denis told the reporter that he was present at the rally "out of curiosity" and as an "observer" because he could "understand both sides of the argument for COVID restrictions." He also told the reporter that he believed the Safer at Home Order was harmful to small businesses. Racine Mayor Mason saw the interview.

The city denied Dimple's LLC's second application on May 12, 2020. In that round of grants, nearly 200 businesses had applied for about $650,000 in available grant money.

The day after that denial, on May 13, 2020, the Wisconsin Supreme Court invalidated the Safer at Home Order. The court based its decision on state administrative law, without reaching any federal constitutional issues.

About seven weeks later, on June 26, 2020, Mayor Mason told the Racine Journal Times that he denied Dimple's LLC's

application in the second round of grants because of Denis's attendance at the April 24 rally. The mayor's press statement read in full:

> As Mayor, it is my duty to protect the public health of our City's residents. While I certainly support the rights of free speech and assembly, I cannot in good conscious [sic] send scarce City resources to a person or business that willingly jeopardized public health, especially when they were competing with other businesses who were not flagrantly violating safety measures. If an applicant was openly violating the statewide "Safer at Home" order and the public health emergency under which the City was operating to help mitigate the spread of coronavirus, that applicant would compete less favorably. For instance, participating in mass gatherings outside of our community, such as the rally that was held at the State Capitol – such large gatherings have been linked to cases of COVID-19 around the state – and then returning to our City, only served to put our residents at unnecessary risk and, thus, factored into the funding consideration. When it comes to disbursing discretionary funds aimed at helping businesses who were sacrificing to protect public health, the City is not going to reward business owners who took reckless behaviors that risked the health of our community.

Dkt. 45 at 7. Testimony in this case showed that Mayor Mason brought up Denis's attendance at the April 24 rally when he

and the ad hoc committee discussed Dimple's LLC's application for the second round of funding. Dkt 52-3 at 17, 19; Dkt. 52-1 at 2–3. Also, during a telephone call with Dimple after the denial of her LLC's second application, Mayor Mason explained that he denied the grant because of Denis's attendance at the April 24 rally. Dimple's contemporaneous notes of the call say, "He said it was against the compliance to … be in [the] rally. Then I connected that he was talking about Denis going to Madison protest." Dkt 49-2 at 3.

On February 15, 2021, the Navratils and Dimple's LLC filed this suit against the City of Racine and Mayor Mason alleging that the denial of their grant application violated their constitutional rights to free speech, equal protection, and due process. The Navratils and Dimple's LLC further alleged that Mayor Mason defamed Denis in the June 2020 press statement describing the reason he denied the application.

The city and Mayor Mason moved to dismiss some claims. The district court granted the motion, dismissing Dimple's LLC's First Amendment retaliation claim, Denis's equal protection and due process claims, and Dimple's equal protection and due process claims. The appellants do not challenge any of these dismissals on appeal. Dkt. 65.

The city and Mayor Mason eventually moved for summary judgment on the remaining claims: Denis's First Amendment retaliation claim, Dimple's LLC's equal protection claim, Dimple's LLC's due process claim, and Denis's defamation claim. The district court granted summary judgment for the defendants on all claims, and this appeal followed.

II. *Standard of Review*

We review a trial court's grant of summary judgment de novo, construing the evidence in the light most favorable to the non-moving parties and drawing all reasonable inferences in their favor. E.g., *Carmody v. Board of Trustees of Univ. of Illinois*, 893 F.3d 397, 401 (7th Cir. 2018). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

III. *Analysis*

   A. *First Amendment Retaliation*

The district court granted summary judgment to the city and Mayor Mason on Denis's First Amendment retaliation claim.[2] To avoid summary judgment on a section 1983 claim of First Amendment retaliation, a plaintiff must offer evidence showing that: "(1) he engaged in activity protected by the First Amendment, (2) he suffered an adverse action that would likely deter future First Amendment activity, and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to retaliate." *Gekas v. Vasiliades*, 814 F.3d 890, 895 (7th Cir. 2016) (internal quotations omitted). Here, Denis's claim fails on the first element. His attendance at the April 24, 2020 rally was not protected First

---

[2] Any retaliation claim by Dimple Navratil was waived in the district court. *Navratil*, 2023 WL 9190207 at *4 n.4.

Amendment activity because the rally was prohibited by two valid time, place, and manner restrictions—the Safer at Home Order and the state permit requirement.

###### 1. *Valid Time, Place, and Manner Restrictions*

Whether certain speech or activity is protected under the First Amendment is a question of law for the court. *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016). The First Amendment protects freedom of speech, the right to assemble peaceably, and the right to petition the government for redress of grievances, but those rights are not absolute. E.g., *Heffron v. Int'l Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981) ("[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired."). As explained by the Supreme Court, "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989), quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

We assume for purposes of this appeal that Denis's attendance at the rally was expressive conduct that constitutes speech pursuant to the First Amendment. See, e.g., *Spence v. Washington*, 418 U.S. 405, 409–10 (1974) (explaining that conduct must be "sufficiently imbued with elements of communication" to constitute a "form of protected expression"). His conduct was not protected, however, from

reasonable and content-neutral restrictions on the time, place, and manner of his expression.[3]

### a. *Safer at Home Order*

The Safer at Home Order was content-neutral and de-signed to serve a significant government interest—protecting public health and safety. See, e.g., *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 343, 347 (7th Cir. 2020) (affirm-ing denial of preliminary injunction after district court found Illinois governor's executive order limiting gathering sizes during COVID-19 pandemic was supported by compelling need to safeguard public health during pandemic).

As we explained in *Elim Church* in June 2020, "we do not evaluate orders issued in response to public-health emergencies by the standard that might be appropriate for years-long notice-and-comment rulemaking." *Id.* at 347, citing *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). This deference is appropriate. The Constitution "principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'" *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (mem.) (Roberts, C.J., concurring) (alteration in original), quoting *Jacobson*, 197 U.S. at 38. "When those officials 'undertake[ ] to act in areas fraught with medical and scientific uncertainties,' their latitude 'must be especially

---

[3] Denis asserts that he attended the April 24 rally merely as an "ob-server" because he could see "both sides" of the issue. Dkt. 50-1 at 4–5. The district court inferred that Denis's attendance at the rally was thus not expressive conduct because simply observing an event does not com-municate any particular message. 2023 WL 9190207 at *4. Defendants do not challenge on appeal whether Denis's attendance at the rally was ex-pressive conduct, so we do not address this alternative holding.

broad.'" *Id.* (alteration in original), quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974).

Plaintiffs argue that the Safer at Home Order was too broad to be a valid time, place, and manner restriction because it banned public gatherings. April 2020 was scarcely a month into the COVID-19 pandemic and our understanding of the virus's spread. State and local officials were working to slow the transmission of the virus, to "flatten the curve," to protect public health, and to limit the severe demands that COVID-19 cases were placing on the health-care system. Placing limits on public gatherings within the state was tailored to "prevent[ ] the transmission of viral particles … from one person to the next." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 761 (7th Cir. 2020). With the benefit of hindsight and additional scientific evidence, we assume that reasonable minds might disagree on whether any particular restrictions among those early responses were the most effective means of stopping the spread of COVID-19. But our analysis is focused on what state and local officials knew at the time. See *Elim Church*, 962 F.3d at 347 ("Perhaps with more time—and more data from contact tracing—Illinois could figure out just how dangerous religious services are compared with warehouses and similar activities, but no one contends that such data were available when Executive Order 2020-32 was promulgated (or, for that matter, now).").

Here, it is clear at the time of its issuance that a temporary ban on large public gatherings during a global pandemic was a valid time, place, and manner restriction on speech. It was reasonable, and it was content-neutral. Denis's attendance at the April 24 rally violated the Safer at Home Order. Therefore,

his attendance was not protected First Amendment activity and he cannot establish a retaliation claim.

b. *State Permit Requirement*

Wisconsin Statute § 16.845 authorizes the state to establish permitting requirements for gatherings on state property, including the State Capitol Park where the April 24 rally was held. Under the regulations for permits for events on State grounds, permits can be denied on the basis that a proposed event is a hazard to the safety of the public or involves an activity prohibited by law. Wis. Admin. Code § 2.04 (Aug. 2014). The Wisconsin permitting scheme for the Capitol is a quintessential time, place, and manner restriction. See *Thomas v. Chicago Park District*, 534 U.S. 316, 322, 324 (2002) (permitting scheme for park events that allowed denials based on risks to public health and safety was valid time, place, and manner restriction); *Gaylor v. Thompson*, 939 F. Supp. 1363, 1370–71 (W.D. Wis. 1996) (holding that permitting scheme for displaying signs in Wisconsin State Capitol was not unconstitutional).

The April 24 rally organizers were denied a permit because the Safer at Home Order prohibited large public gatherings for public health reasons during the pandemic. The April 24 rally violated the state permit requirement, which is another reason that Denis's attendance at the rally was not protected First Amendment activity.

2. *Later Invalidation of the Safer at Home Order*

Plaintiffs argue that Denis's attendance at the April 24 rally was in fact protected First Amendment activity because the Wisconsin Supreme Court later held the Safer at Home Order invalid. That later decision does not affect our

conclusion. The court struck down the Safer at Home Order in *Wisconsin Legislature v. Palm*, 2020 WI 42, 942 N.W.2d 900. The court based its decision on a failure to follow proper state administrative law procedural rulemaking requirements and an over-stepping of statutorily delegated authority. *Id.* ¶¶ 3–4. At no point did any court find the Safer at Home Order violated the First Amendment.

The Safer at Home Order's later invalidation on state-law grounds does not retroactively render Denis's attendance at the rally protected First Amendment activity. Particularly not where, as here, the argument would be used to support liability against a municipality relying on a facially valid law to protect public health. Cf. *Lemon v. Kurtzman*, 411 U.S. 192, 209 (1973) (plurality opinion) ("[S]tate officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful."); *Walker v. City of Birmingham*, 388 U.S. 307, 317, 320–21 (1967) (affirming criminal contempt convictions for violating state-court injunction of dubious constitutionality restricting public demonstrations for civil rights). Because Denis did not engage in protected First Amendment activity, we affirm the grant of summary judgment to the city and Mayor Mason on Denis's First Amendment retaliation claim.[4]

---

[4] By affirming on this ground, we bypass questions about whether Denis has a viable claim for a violation of his own First Amendment rights, given that the alleged adverse action was taken against his spouse's LLC instead of him personally.

B. *Equal Protection*

1. *Political Animus Theory*

Plaintiffs argue that the city and Mayor Mason violated Dimple's LLC's right to equal protection under the law on the theory that its grant application was denied based on Mayor Mason's political animus toward the Navratils. The admissible evidence submitted on summary judgment does not raise a genuine issue of fact on this theory but shows instead, beyond reasonable dispute, that Dimple's LLC was denied funding based on Denis's attendance at the April 24 rally in violation of the Safer at Home Order.

Ample evidence supports the defendants' assertion that Dimple's LLC's grant application was denied because of Denis's attendance at the April 24 rally. The question on appeal is whether plaintiffs offered evidence sufficient to raise a genuine factual dispute about that reason. Plaintiffs rely most heavily on the deposition testimony of James Palenick, City Administrator during the emergency grant process, as evidence of Mayor Mason's political animus.

Palenick testified that in the discussion of Dimple's LLC's grant application, Mayor Mason explained he was not supportive of the application because of Denis's attendance at the April 24 rally. Palenick testified that Mayor Mason said, "if he had anything to say, that [Dimple's LLC] wouldn't get a grant." Dkt. 52-1 at 2–3. That comment is not evidence of political animus, but only further confirmation that Dimple's LLC was denied emergency funding due to Denis's rally attendance. According to Palenick, Denis's attendance at the rally was the only reason Mayor Mason gave for opposing Dimple's LLC's grant application.

Palenick went on to testify that he *believed* the denial of Dimple's LLC's application was "political in nature." *Id.* at 4. When pressed on what his belief was based upon, however, Palenick explained that it was mostly Republicans who opposed the Safer at Home Order and that Mayor Mason had longtime ties to the Democratic party. *Id.* Palenick also testified, that he did not know whether Mayor Mason knew the Navratils' political affiliations, but rather assumed Mayor Mason did because politics "was his business." *Id.*

Palenick's belief about Mayor Mason's political motivation was not supported by any factual basis in the admissible evidence. It is well-established that "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017), quoting *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014).

Palenick's statement that Dimple's LLC's grant denial was politically motivated was no more than conjecture and supposition that a Democratic mayor must necessarily have animus toward a Republican constituent. That is not enough to defeat summary judgment. See *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 587 (7th Cir. 2021) (affirming grant of summary judgment to defendants: "[w]hile it is clear from [plaintiffs'] testimony that they believe [defendant] is the reason they went out of business and she intentionally tried to drive them out of town, they have failed to present *evidence* to support their beliefs" (emphasis in original)); see also *Circle City Broadcasting I, LLC v. AT&T Services, Inc.*, __ F.4th __, 2024 WL 1634093 at *5 (7th Cir. 2024) (affirming grant of summary judgment to defendants because plaintiff's theory that defendants discriminated against plaintiff company on the

basis of the company owner's race was not backed by evidence and instead based on conjecture); *Garrett v. Barnes*, 961 F.2d 629, 634 (7th Cir. 1992) (upholding directed verdict for defendants: "It may be easy to become cynical about politics and politicians, but public perception of political machinations, innuendo, and speculation cannot be the basis of a jury verdict—and there is nothing else in this case."); *Endicott v. Huddleston*, 644 F.2d 1208, 1215 (7th Cir. 1980) (affirming grant of defendants' motion for judgment notwithstanding the verdict and explaining, "all [plaintiff] has shown is that he is a Democrat and that the defendants are Republicans…. Even drawing all reasonable inferences from the evidence viewed in the light most favorable to plaintiff, we conclude there was insufficient evidence from which a jury could find that the defendants' actions were motivated by political considerations").

The evidence at summary judgment thus showed only one reason for denying Dimple's LLC's grant application: Denis's attendance at the April 24 rally in violation of the Safer at Home Order. The purpose of the city's emergency grants was to keep afloat small businesses forced to close or limit operations by the Safer at Home Order. Basing a denial on Denis's attendance at the rally was not subject to any heightened scrutiny under the Equal Protection Clause, and the defendants' stated reason for the denial easily passes muster as rationally related to a legitimate government purpose. It was not unreasonable to deny discretionary grant funds to a business whose manager seemed to have violated the law, thereby contributing to the public health crisis that created the need for emergency funding in the first place. The denial of Dimple's LLC's grant application was not a violation of the Fourteenth Amendment's Equal Protection Clause.

2. *Class-of-One Theory*

Dimple's LLC also argues a class-of-one equal protection theory. To prevail on a "class-of-one" equal protection claim, a plaintiff must show that it was "treated differently from others similarly situated, without a rational basis for the differential treatment." *Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013). To be similarly situated the comparators must be "identical or directly comparable in all material respects" to the plaintiff. *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010).

Dimple's LLC's theory is that other grant applicants who violated the Safer at Home Order nevertheless received funding. Plaintiffs have provided evidence that some successful applicants likely violated the Safer at Home Order. The problem for plaintiffs on this theory, however, is that they have offered no evidence that, at the time the city was considering the second round of emergency funding applications, Mayor Mason *knew* that any other applicants had violated the order. See Dkt. 52-3 at 14 (Mayor Mason testifying Denis was the only applicant he knew to have violated the Safer at Home Order at the time grants were being considered). Mayor Mason also testified that if he had known other applicants were violating the order, he would have also denied their applications. *Id.* at 14, 16. Even if we take such explanations with a grain of salt for purposes of summary judgment, plaintiffs still have not offered affirmative evidence of any similarly situated comparators—businesses that Mayor Mason knew violated the Safer at Home Order but received funding—to support this claim.

C. *Due Process Claims*

    1. *Procedural Due Process*

Dimple's LLC also argues that the city's denial of its grant application violated its right to procedural due process. The Fourteenth Amendment's Due Process Clause prohibits the deprivation of life, liberty, or property by the government without due process of law. "[W]e consider first whether the plaintiff has been deprived of a protected interest in property or liberty, and if that is established, we consider whether the state's procedures comport with due process." *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 773 (7th Cir. 2021). Here, Dimple's LLC cannot show it had any protected property or liberty interest in the city's COVID-19 emergency grants.

It is well-settled that there is no property interest in a purely discretionary government benefit. See, e.g., *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. … He must, instead, have a legitimate claim of entitlement to it."); *Bell v. City of Country Club Hills*, 841 F.3d 713, 719 (7th Cir. 2016) ("A protected property interest exists only when the state's discretion is clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met." (cleaned up)). Cf. *Rock River Health Care*, 14 F.4th at 774 ("Because [the Medicaid reimbursement rate] is defined by statute, and is not a discretionary determination, it is the type of entitlement that triggers due process protection.").

The city's emergency funding program had certain requirements for eligibility, but once those requirements were

met, the actual award of funds was left to Mayor Mason's discretion. Neither the city nor any governing legal rules guaranteed that a business meeting the criteria would receive funding because the funds available were limited. Dimple's LLC simply had no constitutionally protected property interest in the emergency funds.

Dimple's LLC also argues that the denial of emergency funds deprived it of a liberty interest in its right to run its store. We reject this theory. Denying Dimple's LLC a discretionary grant did not deprive it of any legal right to continue to operate, unlike the revocation of a business license or a retroactive revision of zoning laws. Cf. *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 870–71 (7th Cir. 2009) (business had protected property interest in liquor license and could not be deprived of renewed license without due process of law). Dimple's LLC was not deprived of any constitutionally protected property or liberty interest, so its procedural due process claim fails at the threshold.

### 2. *Substantive Due Process*

Plaintiffs also assert that the denial of the emergency funding application "shocks the conscience." Suffice it to say that the decision to deny one application for limited funds does not meet the extraordinarily high "shocks the conscience" standard. See generally *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) ("[T]he cognizable level of executive abuse of power [is] that which shocks the conscience," and "only the most egregious official conduct" can meet this standard.).

It was not unreasonable, and certainly not conscience-shocking, for the city to decide that a business whose key employee violated COVID-19 restrictions should not receive

limited COVID-19 emergency funding. This practical policy decision is not in the same realm as government actions that have been found conscience-shocking. Compare *Rochin v. California*, 342 U.S. 165, 172–73 (1952) (forcibly pumping criminal suspect's stomach shocked the conscience), and *Hess v. Garcia*, 72 F.4th 753, 757, 767 (7th Cir. 2023) (police officer's repeated sexual assault of minor student during class-required police car ride-along could be found to shock the conscience), with *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012) (police officers harassing plaintiff by issuing 24 bogus parking tickets did not shock the conscience), and *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 368 (7th Cir. 2019) (affirming denial of preliminary injunction and explaining that city attorney's threat to arrest plaintiff for violating ordinance did not shock the conscience). We affirm summary judgment on Dimple's LLC's due process claims.

D. *Defamation*

Plaintiffs also contend that Mayor Mason's June 2020 press statement defamed Denis. First, Denis contends that Mayor Mason's statement that Denis "returned to our City" is false. Second, Denis claims that the explanation that funds would not be granted to people who "willingly jeopardized public health" and "took reckless behaviors that risked the health of our community" defamed him.

The elements of a Wisconsin common law action for defamation are familiar:

> (1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the one defamed; and (3) the communication is unprivileged and tends to harm one's

> reputation, lowering him or her in the estima-
> tion of the community or deterring third per-
> sons from associating or dealing with him or
> her.

*Laughland v. Beckett*, 2015 WI App 70, ¶ 22, 870 N.W.2d 466, 473 (internal quotations omitted).

Truth is a complete defense to a defamation claim so long as the statement is "substantially true." *Lathan v. Journal Co.*, 140 N.W.2d 417, 423 (Wis. 1966). Denis contends that the statement that he returned to "our City" was false because he actually lived in the adjoining Village of Wind Point and did not return to Racine specifically until fourteen days after the rally. His home in Wind Point is within half a mile of the Racine city line. The Navratils referred to themselves in their emergency grant application and the amended complaint in this action as living at a Racine address.

We agree with the district court. "Whether Denis actually returned to the City itself or merely to the area is inconsequential—the mayor's point was simply that it was dangerous for someone to attend a rally and then return to the community." *Navratil*, 2023 WL 9190207 at *8. Mayor Mason's statement that Denis returned to the city was substantially true. The difference between Wind Point and Racine cannot support his defamation claim.

Also, statements of pure opinion are not actionable under defamation law, and a mixed-opinion statement is actionable only "if it implies the assertion of undisclosed defamatory facts as the basis of the opinion." *Laughland*, 2015 WI App 70, ¶ 27 (internal quotations omitted). Mayor Mason's statements that Denis "willingly jeopardized public health" and "took

reckless behaviors that risked the health of our community" are pure opinion statements. They conveyed Mayor Mason's belief that Denis's attendance at the rally was "reckless" and "jeopardized" public health.

The June press statement was issued to explain why Dimple's LLC was denied an emergency funding grant. In this context, the statement did not imply undisclosed, defamatory facts, but explained only that Mayor Mason declined to award emergency funding to a business whose key employee engaged in behavior—attending a rally—that the mayor believed to be a dangerous activity in the midst of a global pandemic and in violation of public health measures. The district court properly granted summary judgment on Denis's defamation claim.

The judgment of the district court is AFFIRMED.