In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 23-2135

KATHRYN KNOWLTON, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CITY OF WAUWATOSA, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 20-cv-1660 — **Nancy Joseph**, *Magistrate Judge*.

_____

ARGUED SEPTEMBER 5, 2024 — DECIDED OCTOBER 16, 2024

_____

Before SYKES, *Chief Judge,* and ST. EVE and LEE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. In February 2020, Joseph Mensah, a police officer in Wauwatosa, Wisconsin, shot and killed Alvin Cole, a Black teenager. After Cole's death, and amidst nationwide protests that followed the deaths of other Black individuals at the hands of police, Wauwatosa community members organized to protest police violence and racism.

In the fall of 2020, the Milwaukee district attorney's office decided not to criminally charge Mensah in connection with Cole's death. Anticipating that decision could spark violence in Wauwatosa, the mayor enacted a limited curfew order to go into effect after its announcement.

The plaintiffs, who attended protests in Wauwatosa or were otherwise affected by the curfew order, brought constitutional and state law claims against the City of Wauwatosa and several individual defendants based on the curfew and police conduct—fourteen causes of action in total. As relevant to this appeal, the plaintiffs brought ten claims under 42 U.S.C. § 1983, including allegations of First Amendment violations, and two claims under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq*. Of those claims, only those alleging violations of the First Amendment and DPPA survived the defendants' motion to dismiss, and only the DPPA claims survived summary judgment and proceeded to trial. Ultimately, the remaining individual defendants prevailed on the DPPA claims, too. This appeal concerns errors the district court allegedly made at each stage of proceedings.

After review, we affirm.

## I. Background

### A. Factual Background

#### 1. Protests Against Police Violence

On February 2, 2020, then-police officer Joseph Mensah shot and killed Alvin Cole, a Black teenager, in Wauwatosa Wisconsin. Cole's death coincided with other high-profile police killings and shootings of Black individuals that year, including George Floyd in Minneapolis, Minnesota; Breonna Taylor in Louisville, Kentucky; and Jacob Blake in Kenosha,

Wisconsin. Each contributed to a period of nationwide awareness of and protests against police violence and racism. In Wauwatosa, too, months of protests followed Cole's death.

In June 2020, Mensah's identity and role in Cole's shooting became public. Wauwatosa's police commissioner suspended Mensah with pay on July 15, 2020. Protests continued in Wauwatosa thereafter, including on August 13, August 14, and September 5, 2020.

Amidst these protests, on August 23, 2020, a police officer in nearby Kenosha shot and seriously injured Jacob Blake, a Black man. In the protests that followed the shooting, two people were killed, one was seriously injured, and widespread property damage occurred throughout Kenosha.

### 2. Wauwatosa Curfew

Back in Wauwatosa, Mayor Dennis McBride prepared for a curfew. On September 30, 2020, in anticipation of the Milwaukee County district attorney's announcement regarding whether to charge Mensah in Cole's death, McBride issued a "Proclamation of Emergency" (the "Emergency Order") explaining the curfew. The Emergency Order stated that the district attorney's office would release its charging decision on October 7, 2020. It further provided:

> [B]ased upon recent experience with protests concerning the continued employment of Officer Mensah by the WPD and upon community response to decisions and actions regarding police officers nationwide, most recently in Kenosha, Wisconsin, and Louisville, Kentucky, it is anticipated that an emergency will exist in the City of Wauwatosa due to conditions which will arise following that announcement, including civil

unrest throughout Wauwatosa which creates concerns for the safety of persons and property and will impair transportation, health, and police protection and other critical systems in Wauwatosa;

[I]n order to protect the systems and services described above, including the safety of persons and property, it will be necessary to remove traffic and pedestrians from Wauwatosa streets, limit the supply of flammable materials, reduce access to certain facilities, preserve resources for expected responses and protect the safety of public employees in the most expedient manner possible to reduce safety risks related to such activity and to protect persons and property in Wauwatosa[.]

The Emergency Order imposed a curfew that temporarily restricted pedestrian and vehicular traffic on Wauwatosa streets. The curfew lasted five nights, from Wednesday, October 7 until Monday, October 12, and ran from 7:00 p.m. until 6:00 a.m.—roughly corresponding to the hours after sunset. It provided exceptions for people commuting to and from work, as well as for government officials, social service workers, and credentialed members of the press.

As expected, on October 7, 2020, the district attorney announced his office's decision to not criminally charge Mensah. Despite the curfew, the announcement sparked nighttime protests in Wauwatosa on October 8, 9, 10, and 11, during which police arrested or ticketed many of the plaintiffs.

### 3. Collection and Distribution of Personal Information

Many of the plaintiffs here were involved with a group called "The People's Revolution," which began protesting police-involved shootings after the death of George Floyd.

Around May 25, 2020, defendant Dominic Ratkowski, a crime analyst for the Wauwatosa police department, developed a "protester target list" of individuals who he believed belonged to the group. The list contained identifying information including names, dates of birth, addresses, and photographs. Ratkowski distributed the list to third parties.

Separately, in January 2021, Lieutenant Joseph Roy, a records custodian in the Wauwatosa police department, released unredacted documents relating to protest activities in response to an open records request. The documents included varying degrees of personal identifying information about more than thirty of the plaintiffs.

**B. Procedural Background**

This litigation has an extensive procedural history. Just two plaintiffs filed the original complaint in November 2020, bringing claims against Wauwatosa, Mayor McBride, and Wauwatosa Police Chief Barry Weber in their official capacities. All of the claims related to the curfew order and police response to the plaintiffs' protest activities. The plaintiffs then filed their first amended complaint in March 2021, adding forty-nine additional plaintiffs, eleven new claims, and this time suing Wauwatosa, Weber, McBride, and "John Does Officers," all in their individual capacities.

On August 21, 2021, the plaintiffs, now numbering more than sixty, again amended their complaint,[1] adding nine defendants. The plaintiffs named each individual defendant in his or her "official capacity," besides McBride, who the

---

[1] The plaintiffs mislabeled this second amended complaint as their Third Amended Complaint.

plaintiffs named in his "official capacity for declaratory and injunctive relief only and in his individual capacity for punitive damages." They also included claims under the DPPA, alleging that Ratkowski and Roy impermissibly collected and disclosed the plaintiffs' personal information.

After filing two notices of errata to correct formatting errors and reassert inadvertently omitted claims, the plaintiffs filed a corrected third amended complaint. In this iteration, the plaintiffs again named all individual defendants except for McBride solely in their official capacities. The district court subsequently dismissed this complaint in a detailed opinion. The court concluded:

> Despite drafting 1,523 allegations over the span of 204 pages, and this being the third iteration of the Complaint, every single one of Plaintiffs' sixteen causes of action fail[s] to state a claim upon which relief can be granted.

The district court expressly cautioned the plaintiffs when redrafting their complaint to "be clear whether asserting a claim against particular defendants in their individual and/or official capacity, or under *Monell*." It also directed the plaintiffs to "consider the law on official and individual capacity claims under § 1983 and sue accordingly." The court gave the plaintiffs leave to file an amended complaint, warning that the next iteration "must address the deficiencies discussed here" or else "risk dismissal … with prejudice."

The plaintiffs thereafter filed their fourth amended complaint, once more adding new defendants and new claims. The complaint named every individual defendant, including McBride, in his or her individual capacity "for declaratory

and injunctive relief only." The plaintiffs also named McBride in his "individual capacity for punitive damages."

The district court granted the defendants' motion to dismiss the fourth amended complaint, dismissing with prejudice the plaintiffs' claims for relief against the defendants sued in their individual capacities for declaratory and injunctive relief only. The district court also stated that the plaintiffs would "not be allowed to file yet another amended complaint." It thereafter denied the plaintiffs' motion for reconsideration.

After discovery, the district court granted summary judgment for the defendants on the plaintiffs' First Amendment claim against Wauwatosa and McBride, Title VI claim against Wauwatosa, and state law malicious prosecution claim against officer Jeffrey Farina.

The DPPA claims against Ratkowski and Roy proceeded to trial. During deliberations, the jury sent a question to the court asking whether "height, weight, hair color, and eye color" constituted "personal information" under the DPPA. The district court answered by redirecting the jury to its initial instruction, which provided the statutory definition of the term. The jury asked no further questions and returned a verdict in favor of Ratkowski and Roy.

## II. Discussion

The plaintiffs raise four issues on appeal that implicate different stages of this litigation. First, they challenge the district court's grant of summary judgment for Wauwatosa and McBride on the plaintiffs' First Amendment claim related to the curfew. Second, they challenge the district court's dismissal of the plaintiffs' § 1983 claims against the individual

defendants and denial of leave to amend those claims. Finally, they challenge the district court's response to the jury's DPPA question.

## A. First Amendment Claim

The First Amendment "reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). But "those rights are not absolute." *Navratil v. City of Racine*, 101 F.4th 511, 519 (7th Cir. 2024); *see also Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981) ("[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired."). "[E]ven in a public forum," where the First Amendment applies with particular force, "the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal citation and quotation marks omitted).

Under *Ward*, we ask whether the challenged restriction (1) is content neutral; (2) serves a significant government interest; (3) is narrowly tailored to promote that interest; and (4) leaves open ample alternative channels of communication. *See Hodgkins v. Peterson*, 355 F.3d 1048, 1059 (7th Cir. 2004). The plaintiffs challenge the district court's ruling on the second, third, and fourth elements. They waived their challenge

to the first element by failing to raise it until their reply brief.[2] *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021). We review the district court's decision to grant the defendants' motion for summary judgment de novo. *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022).

### 1. Significant Government Interest

We first consider whether Wauwatosa had a significant interest in enacting the curfew. The Emergency Order made clear that Wauwatosa imposed the curfew for the "safety of persons and property." The plaintiffs do not dispute that preserving public safety constitutes a significant government interest. *See, e.g.*, *McCullen*, 573 U.S. at 486; *Hill v. Colorado*, 530 U.S. 703, 715 (2000); *Navratil*, 101 F.4th at 520 (recognizing the significant government interest in "protecting public health and safety"). Instead, they contend that a question of fact

---

[2] Even if the plaintiffs had not waived their challenge, it would fail on the merits. Regulation of protected First Amendment activity "remains content neutral so long as it is 'justified without reference to the content of the regulated speech.'" *McCullen v. Coakley*, 573 U.S. 464, 465 (2014) (quoting *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986)). On its face, the curfew here regulated all speech in Wauwatosa during nighttime hours regardless of speaker or viewpoint. *See id.* at 479 ("[w]hether petitioners violate the Act depends not on what they say, but simply on where they say it[,]" rendering the act content neutral). Moreover, evidence in the record suggests that Wauwatosa and McBride enacted the curfew to ensure public safety, and not because of disagreement with any specific message. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1129 (9th Cir. 2005) ("The purpose of enacting [the curfew order] had everything to do with the need to restore and maintain civic order, and nothing to do with the content of Appellants' message."). That the curfew may "disproportionately affect" would-be protestors does not render the facially neutral order content based. *Brown v. Kemp*, 86 F.4th 745, 780 (7th Cir. 2023).

exists regarding whether Wauwatosa had a legitimate public safety concern in this instance.

No question of fact exists. Although the plaintiffs are correct that a government "must demonstrate that … harms are real, not merely conjectural," *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994), a government need not wait to act until violence or harm materializes. Indeed, the government has an interest in preventing emergencies and threats to public safety, not merely responding to them after they transpire.[3] *See, e.g.*, *McCullen*, 573 U.S. at 486 (recognizing the government's interest in "ensuring public safety and order, promoting the free flow of traffic on streets and sidewalks, [and] protecting property rights" (citation and internal quotation marks omitted)); *Turner Broad. Sys., Inc. v. F.C.C.*, 520 U.S. 180, 212 (1997) ("A fundamental principle of legislation is that Congress is under no obligation to wait until the entire harm occurs but may act to prevent it."); *Hulbert v. Pope*, 70 F.4th 726, 735 (4th Cir. 2023) ("Preventive measures to promote public safety are a basic contribution of government."); *McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1073 (10th Cir. 2020) ("[A] government need not wait for accidents or

---

[3] The plaintiffs' reliance on the Supreme Court's decisions in *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), *Feiner v. New York*, 340 U.S. 315, 321 (1951), and *Terminiello v. City of Chicago*, 337 U.S. 1, 5 (1949), does not further their argument. The Court in those cases considered whether certain types of speech warrant First Amendment protection at all. Here, the parties do not dispute that the First Amendment protects a person's right to protest; the question we face is whether the government reasonably regulated the plaintiffs' speech. None of the cases the plaintiffs rely on—which do not involve time, place, and manner restrictions—answers that question.

fatalities to address its interest through safety regulations."). The plaintiffs acknowledged as much during oral argument.

The plaintiffs ignore a slew of uncontested evidence in the record that Wauwatosa's public safety concerns were well founded.[4] First, civil unrest began simmering in Wauwatosa in the months leading up to the October curfew. McBride testified during his deposition that "[p]eople were shutting down businesses, pushing people, driving on neighbors' lawns, trashing store windows and windows to the police and the fire commissioners[,]" and "[b]locking off intersections." He further testified that people carried firearms into a council meeting in early July, where "emotions were running high." The plaintiffs provide no evidence to refute this testimony.

Second, the neighboring town of Kenosha saw rioting, extensive property damage, serious physical injury, and two civilian deaths in the wake of the police shooting of Jacob Blake weeks earlier. Although unrest in one city will not always bear on unrest in another, the proximity in time (approximately six weeks) and place (45 miles from Wauwatosa and also on the outskirts of Milwaukee) of these tragic events, coupled with the severity and the already charged environment in Wauwatosa, further supports the City's public safety concerns.

We need not, and do not, decide whether any of these facts alone would suffice to support a significant government

---

[4] This evidence distinguishes this case from *NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 400–01 (N.D. Cal. 2021), on which the plaintiffs rely. The district court in *NAACP* decided the case on a motion to dismiss, with "no evidentiary record before it," and therefore "[no] adequate means" of assessing the challenged curfew. *Id.* at 400.

interest. But on the record here, we agree with the district court that they do.

### 2. Narrowly Tailored

We turn to whether Wauwatosa and McBride appropriately tailored the five-day, nighttime curfew to address the City's safety concerns. To ensure a regulation is narrowly tailored, the government does not need to use "the least restrictive or least intrusive means" to achieve its interest. *Ward*, 491 U.S. at 798. "Rather, the requirement of narrow tailoring is satisfied 'so long as the … regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Id.* at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)); *Milestone v. City of Monroe*, 665 F.3d 774, 784 (7th Cir. 2011). Even a "complete ban can be narrowly tailored" so long as the government seeks to curtail "an appropriately targeted evil." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). Still, the government "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *McCullen*, 573 U.S. at 486.

Wauwatosa and McBride tailored the curfew to promote the government's interest in preserving order and public safety. It kept people off the streets only on the heels of the district attorney's no prosecution announcement—when the City feared for the safety of its people and their property—

and was not imposed arbitrarily because of a generalized fear amidst nationwide protests.[5]

Moreover, the curfew did not burden substantially more speech than necessary. It was limited in duration (lasting five days) and in time (taking effect only at night), and provided exceptions for specific groups of people. The plaintiffs argue that Wauwatosa could have adopted a less restrictive approach—e.g., by shortening the duration of the curfew or more narrowly tailoring place and manner restrictions—but a "regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward*, 491 U.S. at 797, 800 (the court of appeals "erred in sifting through all the available or imagined alternative[s] … in order to determine whether the city's solution was 'the least intrusive means' of achieving the desired end" because "[t]his less-restrictive-alternative analysis … has never been a part of the inquiry into the validity of a time, place, and manner regulation").

The means employed here—a durationally limited, nighttime curfew—was not substantially broader than necessary to prevent the harm it targeted—unsafe conditions in the days immediately following the district attorney's no prosecution announcement.

---

[5] The fact that McBride began planning for the curfew before the district attorney's announcement does not render its imposition improper. The plaintiffs themselves acknowledged the prudence of planning for potential unrest.

### 3. Alternative Channels of Communication

Finally, we consider whether the curfew left open ample alternative means of communication. "While the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places, a restriction on expressive activity may be invalid if the remaining modes of communication are inadequate." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984) (citations omitted). An "alternative does not have to be the speaker's first or best choice, or one that provides the same audience or impact for the speech." *Gresham v. Peterson*, 225 F.3d 899, 906 (7th Cir. 2000) (citing *Heffron*, 452 U.S. at 647 and *Ward*, 491 U.S. at 802). But it "must be realistic," and "cannot totally foreclose a speaker's ability to reach one audience even if it allows the speaker to reach other groups." *Id.* at 906–07.

The Emergency Order left the plaintiffs with ample alternative means of communication. The plaintiffs could protest in Wauwatosa during daytime hours throughout curfew. People who worked "normal work hours" could protest before or after work until 7:00 p.m. on Wednesday, Thursday, and Friday, or during the two weekend days covered by the curfew. People could also protest at any time after the curfew expired.

We are not persuaded by the plaintiffs' argument that a time-based restriction like Wauwatosa's curfew must leave open alternative means of communication during the curfew. We know of no binding or persuasive case that establishes

such a requirement, and the plaintiffs point to none.[6] Our analysis does not depend on whether the plaintiffs had ample means to communicate at night during the five-day curfew, but on whether they had ample, realistic alternatives that would allow them to reach their audience. *Gresham*, 225 F.3d at 907; *see also Tinius v. Choi*, 77 F.4th 691, 702 (D.C. Cir. 2023) (curfew order left open ample alternative channels of communications where protesters "were free to protest during the day between the hours of 6:00 A.M. and 7:00 P.M., and to protest at night after the two-day curfew expired").

The plaintiffs here have made "no showing that the remaining avenues of communication," including protests during the day and over the weekend, "are inadequate." *Ward*, 491 U.S. at 802.[7]

\*        \*        \*

Based on the unique facts in this case, Wauwatosa's limited, nighttime curfew—imposed in anticipation of unsafe conditions following the district attorney's no prosecution

---

[6] The plaintiffs cite only to an out-of-circuit district court case, *Occupy Fresno v. County of Fresno*, 835 F. Supp. 2d 849, 864 (E.D. Cal. 2011). While the plaintiffs in *Fresno* happened to have ability to protest all day, the district court did not impose any requirement that the county permit such unrestricted protest.

[7] The plaintiffs' reliance on our decision in *Hodgkins* is misguided. Although we explained that "many … expressive activities … occur late in the evening," in that case we considered a permanent, statewide juvenile curfew—one far different from the targeted and short-lived curfew at issue here. *Hodgkins*, 355 F.3d at 1062. Unlike the plaintiffs in *Hodgkins*, the plaintiffs here were not asked to permanently surrender their rights "to participate in late-night activities whose context and message are tied to the late hour and the public forum." *Id.* at 1063.

announcement—did not violate the plaintiffs' rights under the First Amendment.

**B. Section 1983 Claims Against Individual Defendants**

The plaintiffs also brought claims under 42 U.S.C. § 1983 against many of the individual defendants named in this action. The district court dismissed these claims with prejudice and denied the plaintiffs leave to amend. The plaintiffs challenge each of these decisions.

**1. District Court's Dismissal**

Section 1983 makes a "person" liable for statutory and constitutional violations committed "under color" of state law. 42 U.S.C. § 1983. Plaintiffs may sue such persons in their individual or official capacities. In an individual capacity suit, a plaintiff may only seek monetary damages; in an official capacity suit, a plaintiff may only seek injunctive or declaratory relief. *Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005); *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991); *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011). We review de novo the district court's dismissal of the plaintiffs' § 1983 claims. *Gonzalez v. McHenry County*, 40 F.4th 824, 827 (7th Cir. 2022).

In their fourth amended complaint, the plaintiffs sued the individual defendants in their "individual capacit[ies] for declaratory and injunctive relief only." The district court correctly dismissed each of these claims because a plaintiff may only obtain declaratory and injunctive relief against parties sued in their official capacities.

In ruling on the defendants' prior motion to dismiss, the district court expressly warned the plaintiffs when filing their next and fifth iteration of their complaint to "consider the law

on official and individual capacity claims under § 1983 and sue accordingly." *Knowlton v. City of Wauwatosa*, No. 20-CV-1660, 2022 WL 298797, at *4 (E.D. Wis. Feb. 1, 2022); *see also Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018) ("[W]e look only to decisions of the court to determine whether the plaintiffs knew of faults with their complaint."). The plaintiffs failed to do so. If the plaintiffs wanted to sue for money damages, they could have (and should have) made that clear. In no prior iteration of their complaint did the plaintiffs sue for money damages against these individual defendants. This is not a case where the plaintiffs inadvertently omitted whether they sought to sue defendants in their individual or official capacities, but the rest of the complaint or pleading history gave the court enough information to draw reasonable inferences. *Cf. Hill*, 924 F.2d at 1374; *Akins v. Bd. of Governors of State Colls. and Univs.*, 840 F.2d 1371, 1377 (7th Cir. 1988).

The solution to the plaintiffs' pleading error is not to read in an ambiguity and allow the fourth amended complaint to go forward. *See Porch v. Univ. of Ill. at Chi. Sch. of Med.*, No. 23-2529, 2024 WL 2287194, at *2 (7th Cir. May 21, 2024) ("The district court correctly rejected [the plaintiff's] amended complaint because, despite the explanation in the first dismissal order, the new pleading did not include [plausible] allegations."). The district court properly dismissed the plaintiffs' claims under § 1983.

### 2. Leave to Amend

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a), and "favors amendment as a general matter," *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 853 (7th Cir. 2022) (citing *Foman v.*

*Davis*, 371 U.S. 178, 182 (1962)). Still, the rule does "not mandate that leave be granted in every case." *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002). Where a plaintiff repeatedly fails to cure deficiencies, the district court enjoys "broad discretion" to deny leave to amend. *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). We review a district court's denial of leave to amend for abuse of discretion and will reverse "only if no reasonable person could agree with that decision." *Freeman v. Ocwen Loan Servicing, LLC*, 113 F.4th 701, 707 (7th Cir. 2024) (quoting *Huon v. Denton*, 841 F.3d 733, 745 (7th Cir. 2016)).

The district court did not abuse its discretion in denying the plaintiffs leave to amend their complaint for a fourth time.[8] The plaintiffs had the benefit of a ruling on the merits of their third amended complaint. Not only that, but the district court pointed out substantive defects, instructed the plaintiffs to pay particular attention to § 1983 pleading requirements, and warned that failure to remedy these defects could result in dismissal with prejudice:

> Plaintiffs are warned that this amended complaint must clarify which Plaintiffs sue which Defendants.

---

[8] The defendants urge us to treat this argument as waived because the plaintiffs did not formally move for leave to amend. We decline to do so. The district court preemptively denied the plaintiffs leave to amend in its ruling on the plaintiffs' motion to dismiss, and so the plaintiffs did not have the opportunity to make a motion. The plaintiffs also attached their proposed fifth amended complaint to their brief in support of reconsideration. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("a formal motion for leave to amend was not necessary at the Rule 12(b)(6) stage," where, among other things, the plaintiff submitted her proposed amended complaint with her motion to alter judgment).

Plaintiffs should consider the law on official and individual capacity claims under § 1983 and sue accordingly. While it is true that pleading rules favor decision on the merits rather than technicalities, as the Seventh Circuit has stated, "these general principles have some limits." *Stanard v. Nygren*, 658 F.3d 792, 800–01 (7th Cir. 2011). After over a year of litigation, we still do not have a proper operative complaint. If Plaintiffs cannot remedy these errors as articulated in this decision, Plaintiffs risk having this complaint dismissed with prejudice.

A district court does not "abuse its discretion when it had explained what was wrong with the initial complaint and had already provided one opportunity to amend." *Porch*, 2024 WL 2287194, at *2; *see also Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053 (7th Cir. 2019) (no abuse of discretion in denying leave to amend for a fourth time, even though the plaintiffs only had the benefit of one judicial opinion); *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (the plaintiff's "failure to fix … shortcomings" the district court identified in its complaint provided "ample grounds for dismissal"). This holds especially true where, as here, the plaintiffs "[were] represented by counsel," *Porch*, 2024 WL 2287194, at *2, and the district court gave them "adequate warning that refusal to comply would lead to dismissal," *Airborne Beepers & Video, Inc.*, 499 F.3d at 667. Given the protracted nature of this litigation, the plaintiffs' repeated opportunities to state a claim, and their disregard of the district court's explicit instructions, the district court did not abuse its discretion in denying the plaintiffs leave to amend.

**C. DPPA Jury Instruction**

We turn to the final issue on appeal: the district court's answer to a jury question relating to the definition of "personal information" under the DPPA. We review the content of the district court's response for an abuse of discretion. *Morgan v. City of Chicago*, 822 F.3d 317, 342 (7th Cir. 2016); *United States v. Young*, 316 F.3d 649, 661 (7th Cir. 2002).

The district court initially instructed the jury:[9]

"Personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status.

During its deliberations, the jury sent a question to the district court in connection with this instruction: "[a]re height, weight, hair color, and eye color considered as 'personal information' pertinent to the DPPA?" The district court

---

[9] The plaintiffs did not object to the jury instruction at any point before or during trial and the record belies their contention that they did not have the opportunity to object. The district court held a jury instruction conference during which the plaintiffs raised multiple arguments but did not challenge the statutory definition of "personal information" as proposed. When the district court went a step further and invited objections, the plaintiffs' counsel responded that they had "[n]othing."

responded by referring the jury back to its original instruction, over objection from the plaintiffs' counsel.[10]

The district court did not abuse its discretion in referring the jury back to its original instruction. A district court has "broad" discretion in responding to a jury question, so long as the answer "dispels any confusion quickly and with concrete accuracy." *United States v. Durham*, 645 F.3d 883, 894 (7th Cir. 2011). This does not require the "best" answer. *United States v. Hewlett*, 453 F.3d 876, 880 (7th Cir. 2006); *see also Sowewimo v. Hennrich*, 81 F. App'x 893, 896 (7th Cir. 2003) (no abuse of discretion even where "there may have been alternative or more direct responses" to a jury question). If the original instruction "'clearly and correctly states the applicable law, the judge may properly answer the jury's question by instructing the jury to reread the instructions.'" *United States v. Span*, 170 F.3d 798, 802 (7th Cir. 1999) (quoting *United States v. Mealy*, 851 F.2d 890, 902 (7th Cir. 1988)); *see also Sowewimo*, 81 F. App'x at 896; *Durham*, 645 F.3d at 894 (no abuse of discretion where the district court referred the jury back to legally sound instructions, rather than answering its question in the affirmative).

The district court's original instruction presents an accurate statement of the law. It took the language directly from the DPPA's definition of "personal information." 18 U.S.C.

---

[10] The DPPA defines "personal information" as "information that identifies an individual." 18 U.S.C. § 2725(3). In *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 943 (7th Cir. 2015), we interpreted that "broad" language to hold that age, height, weight, hair color, and eye color "relate[] to the [individual's] physical appearance and, therefore, indisputably aid[] in 'identif[ying]' them" under the DPPA.

§ 2725. That the plaintiffs wanted the district court to answer with a simple "yes" does not amount to an abuse of discretion. *Hewlett*, 453 F.3d at 880.

### III. Conclusion

The district court properly held that Wauwatosa imposed a permissible time, place, and manner restriction under the First Amendment. It did not err in dismissing the plaintiffs' § 1983 claims as inadequately pleaded and it acted well within its discretion in denying leave to amend. Its answer to the jury's question similarly fell within its discretion. For these reasons, the judgment of the district court is

AFFIRMED.